Coos
No. 84-226

TODD J. DIMICK,
BY HIS FATHER AND NEXT FRIEND,
DONALD F. DIMICK

AND

DONALD F. DIMICK, INDIVIDUALLY

v.

REXFORD A. LEWIS

August 15, 1985

*Sheehan, Phinney, Bass & Green P.A.,* of Manchester (*James Q. Shirley* and *Douglas G. Verge* on the brief and orally), for the plaintiffs.

*Branch and Greenhalge,* of Concord (*Frederic T. Greenhalge* on the brief and orally), for the intervenor, Blue Cross/Blue Shield of New Hampshire-Vermont.

*Brown and Nixon P.A.,* of Manchester (*Kenneth Chad Brown* and *Joseph F. Keefe* on the brief, and *Mr. Keefe* orally), for Sandra J. Evans, P/M/A Patricia Evans, and Patricia Evans, individually, as amicus curiae.

BROCK, J.   The issue in this appeal is whether the intervenor, Blue Cross/Blue Shield of New Hampshire-Vermont (Blue Cross/Blue Shield), is entitled to reimbursement for medical expenses paid on behalf of the insured Todd Dimick, a minor, based on an alleged settlement agreement and pursuant to the subrogation clause of its contract of health insurance with Donald F. Dimick, the father of the injured minor. The Superior Court (*Temple,* J.) ruled that the settlement negotiation between the plaintiffs and the intervenor resulted in nothing more than a promise to pay, conditioned upon whether a subrogation right to recovery existed, and that because the injured minor was not made whole by his recovery from the tortfeasor, Blue Cross/Blue Shield has no right of subrogation against the plaintiff. We affirm in part and reverse in part.

In July 1981, the minor plaintiff, Todd Dimick, was seriously injured when the motorcycle he was riding collided with an automobile driven by the defendant, Rexford A. Lewis. Blue Cross/Blue Shield paid medical benefits in the amount of $41,217.91 for the benefit of Todd under a Blue Cross plan to which his father was a

subscriber. In April 1982, the plaintiffs brought an action against the defendant for injuries sustained and expenses incurred as a result of the accident.

On February 2, 1983, the plaintiffs' counsel and representatives of Blue Cross/Blue Shield met and agreed that Blue Cross/Blue Shield would reduce its subrogation claim from approximately $41,217 to approximately $12,524. The parties disagree as to whether or not this meeting constituted a binding agreement on the part of the plaintiffs to pay the $12,524 once the case was settled with the defendant.

Blue Cross/Blue Shield was notified by the plaintiffs' counsel on May 23, 1983, that the settlement agreement was no longer valid because of this court's decision in *Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 459 A.2d 226 (1983), and offered $5,000 in settlement. The parties agreed to set aside $12,524 in superior court, pending resolution of the disputed claim.

After negotiating a settlement with the defendant's insurer for the policy limit of $101,000 on May 26, 1983, the plaintiffs filed a Petition for Approval of Settlement on Behalf of a Minor. The petition was approved by the superior court in accordance with RSA 464-A:42.

Blue Cross/Blue Shield subsequently filed a "petition of subrogee to intervene," asking that the settlement agreement between the plaintiffs and the defendant and any releases given by the plaintiffs be declared null and void or in the alternative that Blue Cross/Blue Shield be allowed to recover the $12,524, based on a promise to pay between the plaintiffs' counsel and Blue Cross/Blue Shield.

We first address the issue of whether or not the settlement agreement of February 2, 1983, between the plaintiffs' attorney and representatives of Blue Cross/Blue Shield, whereby the plaintiffs agreed to pay $12,524 to the insurer if and when a settlement with the tortfeasor was reached, was binding upon the parties. Following the February 2 meeting, Blue Cross/Blue Shield's representative sent a letter, on February 9, to the plaintiffs' counsel which reads in pertinent part:

> "This agreement is based on the fact that no further benefits will be provided prior to the actual settlement of this case and that you will forward to the Plan a check in the amount of $12,524.74 within 30 days following the date of settlement. If you have any questions, please contact us."

Blue Cross/Blue Shield received no response to this letter.

Blue Cross/Blue Shield argues that the February 2 agreement

was binding upon both parties and that it relied on the terms of the agreement by making no effort to intervene in the underlying tort action.

■■ In response, the plaintiffs claim that no such agreement with Blue Cross/Blue Shield was ever made and that the agreement was conditioned upon whether a subrogation right to recovery actually existed. The court found that the February 9 letter was not persuasive on the issue of a promise to pay, both because of the absence of a response letter and because, by its own terms, it made any right to payment conditioned on the date of settlement. The court further noted that the settlement agreement delineated the $12,524 as a disputed amount. This court will not disturb the decision of the trier of fact unless the findings are clearly erroneous. *Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981). In light of the evidence, we cannot say that the trial court's finding that the settlement negotiation was a promise to pay *conditioned upon* whether a subrogation right to recovery existed is unreasonable.

Blue Cross/Blue Shield next urges that this court not adopt the plaintiffs' theory that an insured must be made whole before the insurer is entitled to reimbursement. It argues that in a settlement agreement between a plaintiff and a tortfeasor, as opposed to a trial verdict, the insured waives his right to any judicial determination of his losses and that he cannot by such settlement defeat the claim of the insurer by asserting that his losses exceeded the settlement amount. *See Illinois Automobile Ins. Exch. v. Braun*, 280 Pa. 550, 557–58, 124 A. 691, 693 (1924).

■ Subrogation, which has its origins in equity, is generally not allowed where the insured's total recovery is less than the insured's actual loss. *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn. 1983). This rule is usually applied, however, in cases where there is a recovery *in full* upon a judgment, and in absence of express contract terms. A settlement, on the other hand, usually involves a reduced recovery, and we are reluctant in such a case to apply either an insured-first or an insurer-first priority rule. *See generally*, R. KEETON, INSURANCE LAW, ch. 3 § 3.10(e), at 164–65 (1971); Comment, *Subrogation in Pennsylvania: Competing Interests of Insurers and Insureds in Settlements with Third Party Tortfeasors*, 56 TEMP. L.Q. 667, 679 (1983). While the amounts claimed by the plaintiffs in their writs far exceed the amount of the settlement, the plaintiffs did not "test out what their full loss was by pressing the suit against the [tortfeasor] to verdict." *See Illinois Auto Ins. Exch. v. Braun, supra* at 558, 124 A. at 693.

■ The problem in this case is further complicated by the fact that an injured minor and his father, both of whom are policy "members" under a health insurance plan, are involved. Where there is a valid subrogation clause in an insurance policy involving an injured minor and a parent, the health insurer is subrogated to the parent's right to recover medical expenses. *Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 141, 459 A.2d 226, 228 (1983). The Petition for Approval of Settlement allocates only $1,996 reimbursement to the parents despite the fact that the total amount for medical expenses is listed as $43,423.26.

■ The plaintiffs in this case cannot jeopardize the insurer's position by making a unified claim for insured and uninsured losses and then unilaterally allocate only a small portion of the settlement to the parents in order to frustrate the insurer's rights. *Illinois Automobile Ins. Exch. v. Braun supra.* Thus, the "top dollar" is awarded to the injured minor with a minimal amount awarded to the minor's parent. *See* Capwell and Greenward, *Legal and Practical Problems Arising from Subrogation Clauses in Health and Accident Policies*, 54 MARQ. L. REV. 255, 294 (1971).

■ We therefore vacate the trial court's order denying Blue Cross/Blue Shield's "petition to intervene" and for relief, and remand with instructions that the trial court, absent an agreement of the parties, make separate findings as to the extent of loss incurred by the minor plaintiff and by his parent. The trial court should then determine the amount of the net proceeds to which Blue Cross/Blue Shield is entitled on a pro-rata basis, proportionate to the plaintiff-father's share of the total settlement. *See Germer v. Public Service Mutual Insurance Co.*, 99 N.J. Super. 137, 145, 238 A.2d 713, 717 (1967).

*Affirmed in part; reversed in part; remanded.*

KING, C.J., did not sit; the others concurred.