Robert Kent HILL, individually and as Personal Representative of the heirs of Tamara Elaine Hill, deceased, and Lorin Dean Caldwell, individually and as personal representative of the heirs of Troy Neil Caldwell, deceased, Plaintiffs and Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant, Third–Party Plaintiff–Appellee and Cross–Appellant,

v.

Kenneth Paul BRYAN, Third–Party Defendant and Cross–Appellee.

Nos. 20335, 20391.

Supreme Court of Utah.

Nov. 1, 1988.

See also 709 P.2d 257.

Wallace R. Lauchnor, Salt Lake City, for Robert Kent Hill and Lorin Dean Caldwell.

Glenn C. Hanni, R. Scott Williams, Salt Lake City, for State Farm Mut. Auto. Ins. Co.

J. Anthony Eyre, Heinz J. Mahler, Salt Lake City, for Kenneth Paul Bryan.

DURHAM, Justice:

Plaintiffs appeal the trial court's grant of summary judgment in favor of defendant, arguing that numerous triable issues of fact exist and claiming bad faith. State Farm appeals from a judgment in favor of third-party defendant Bryan. We reverse the judgment against plaintiffs and affirm the judgment against State Farm.

On June 6, 1982, an automobile owned and driven by Kenneth Paul Bryan, who was legally intoxicated, ran a red light and struck a vehicle owned by plaintiff Lorin Caldwell and driven by Caldwell's son. Plaintiff Robert Hill's daughter was an occupant in Caldwell's vehicle. The force of the impact was fatal to both Caldwell's son and Hill's daughter. At the time of the accident, Caldwell's vehicle was insured by State Farm; Bryan's vehicle was insured by Cumis Insurance International. State Farm paid $5,510 to Caldwell for property damage to his vehicle. Shortly thereafter, Cumis offered to tender the policy limits of $50,000 on Bryan's policy to plaintiffs in an attempt to satisfy plaintiffs' claims. State

Farm thereupon notified Cumis of its subrogation claim for the amount it had paid Caldwell for property damage.

Both plaintiffs contacted attorneys, who filed separate suits against Bryan and independently investigated the extent of his financial holdings. These investigations revealed that, aside from the Cumis policy, Bryan was insolvent. After this discovery, Caldwell and Hill withdrew their suits against Bryan and made a claim with Cumis for the policy proceeds, which were to be divided evenly between them. Cumis refused to simply deliver one-half to each plaintiff because of State Farm's subrogation claim. Plaintiffs therefore sought a waiver of claim from State Farm, arguing that the value of their wrongful death actions far exceeded Bryan's policy limits. State Farm refused to waive its subrogation claim and apparently urged plaintiffs to litigate their suits against Bryan so that the amount of their damages could be judicially ascertained. Plaintiffs determined the cost of acquiring such a judicial determination to be prohibitive.

Plaintiffs signed separate releases of claims in favor of Bryan, Cumis, and other possible defendants. In return, Cumis tendered $22,245 to Hill and $27,755 to Caldwell.[1]

Because Cumis refused to proffer policy proceeds unless State Farm's subrogation interest was accounted for, its tender to Caldwell consisted of a check for $22,245 made to Caldwell alone and a check for $5,510 made jointly to Caldwell and State Farm. The latter draft corresponded to the amount of property damage incurred by Caldwell and accounted for State Farm's subrogation claim. The release signed by Caldwell recognized the dispute surrounding the $5,510 by stating:

[A] controversy exists between State Farm Mutual Insurance Company and Lorin D. Caldwell as to who is entitled to the said amount, and that the matter will be resolved between the two or by pay-

---

1. To arrive at these figures, the parties subtracted the property damage amount from the total policy proceeds and divided the remainder equally between them. The disputed property damage award was then added to Caldwell's portion because he was the owner of the damaged automobile.

ment into court or by judicial determination.

Plaintiffs and State Farm failed to reach an accord for more than one year after the release was signed. Plaintiffs filed suit against State Farm, seeking payment of $5,510 and alleging bad faith on behalf of State Farm for its refusal to waive the subrogation claim. In turn, State Farm filed a third-party claim against Bryan for subrogation and indemnity. State Farm also counterclaimed against plaintiffs for $5,510.

State Farm filed a motion for summary judgment on both plaintiffs' complaints and on its own counterclaim. The trial court granted the motion, awarding State Farm $5,510, interest, and attorney fees. The court also decreed that State Farm had no cause of action against Bryan.

■ In reviewing a grant of a motion for summary judgment, all doubts or uncertainties concerning issues of fact are viewed in the light most favorable to the party opposing summary judgment. *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles*, 681 P.2d 1258, 1261 (Utah 1984). Where a triable issue of fact exists, the cause will be remanded for determination of that issue.

Defendant State Farm asserts that it is subrogated to the rights of plaintiffs and that State Farm should thereby recover the amount it paid for property damage from the amount plaintiffs recovered from the third-party tort-feasor. Plaintiffs argue that State Farm's subrogation rights do not arise until plaintiffs have been made whole.

■ Subrogation is an equitable doctrine and is governed by equitable principles. This doctrine can be modified by contract, but in the absence of express terms to the contrary, the insured must be made whole before the insurer is entitled to be reimbursed from a recovery from the third-party tort-feasor. *Lyon v. Hartford Accident & Indem. Co.*, 25 Utah 2d 311, 318, 480 P.2d 739, 744 (1971). Noncontractual subrogation rights will only be enforced on behalf of a party maintaining a superior equitable position, and the insurer's equitable position cannot be superior to the insured's unless the insured has been completely compensated. *Transamerica Ins. Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783 (1972); *see also Culver v. Insurance Co. of N. Am.*, 221 N.J. Super. 493, 535 A.2d 15 (1987); *Westendorf v. Stasson*, 330 N.W.2d 699 (Minn.1983).

When the amount of damages incurred by the insured has been judicially ascertained, the extent of the subrogation right of the insurer is usually undisputed. The insured is not entitled to double recovery, and the insurer is equitably entitled to recover any amounts from the insured that the insured recovered from the tort-feasor.

When the insured settles with the tort-feasor before the amount of damages has been judicially determined, it is more difficult to ascertain whether the insurer is entitled to recover all or any of the amount paid on the policy to the insured. *See generally* Comment, *Subrogation in Pennsylvania—Competing Interests of Insurers and Insureds in Settlements with Third–Party Tort Feasors*, 56 Temp. L.Q. 667 (1983).

In *Transamerica Insurance Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783 (1972), this Court examined an insurance company's claim for subrogation against its insured where the insured had settled with a third-party tort-feasor. The insurance company asserted that the settlement covered the insured's entire claim and that the insurance company was therefore entitled to receive reimbursement for the medical expenses it had paid the insured. In revising the summary judgment, this Court noted that a lump-sum settlement without apportionment as to specific items of damage is not sufficient to indicate whether the insured had received double compensation for the same injury. *Id.* 29 Utah 2d at 106, 505 P.2d at 786. In order to ascertain what the settlement in *Barnes* was intended to cover, this Court reversed and remanded the cause for a trial. *Id.* 29 Utah 2d at 107, 505 P.2d at 787.

Setting forth the purpose and intended allocation of money given in the settlement

is a simple matter. As this Court noted in *Barnes*, to the extent a negotiated settlement was intended to include damages previously paid to the insured by the insurer, the tort-feasor who is aware of the insurer's subrogation claim should offer payment in two drafts: one draft for the insured alone and a separate draft issued to the insured and the insurer jointly. *Id.* 29 Utah 2d at 106, 505 P.2d at 787. In so doing, the apportionment of the settlement amount is clearly shown and the intentions of the parties can most effectively be enforced.

■ In the case now before the Court, the insurer's right to subrogation was set forth in the insurance policy. Unfortunately, the record does not reveal the extent of the subrogation terms, nor does it provide a complete copy of the insurance policy. We are thus unable to ascertain the intent of the parties as to the extent of their respective rights under the subrogation clause. Therefore, the doctrine of subrogation should be applied in this case according to general principles of equity.

As suggested in *Barnes*, Cumis prepared two separate drafts when tendering payment to Caldwell under the settlement. The first draft was to Caldwell alone and the second draft, in the amount of $5,510, was made to Caldwell and State Farm. State Farm now argues that the joint draft was intended by plaintiffs and Bryan to cover plaintiffs' property damage. This contention is incorrect. The language of the release does not provide for the allocation of the $5,510. The release states that the parties have yet to determine the rightful owner of that amount because "a controversy exists" between State Farm and Caldwell "as to who was entitled to the said amount, and that the matter will be resolved between the two or by payment into court or by judicial determination." In other words, at the time the draft was conveyed to State Farm and Caldwell, the parties had not agreed whether that amount was intended for property damage or to satisfy the wrongful death claim. Cumis acted properly in acknowledging State Farm's subrogation claim and in being certain that, to the extent State Farm was justified in taking reimbursement from Cumis's policy limits, it would be able to do so. Nonetheless, the plain language of the release shows that neither Cumis nor plaintiffs intended the amount to be allocated to property damage without further negotiation.

■ Because the parties have been unable to resolve the subrogation question, we are required to determine who is entitled to the settlement proceeds. State Farm argues that the amount recovered by plaintiffs from Cumis represents the entire amount of plaintiffs' damages. Plaintiffs, on the other hand, argue that the amount received from Cumis only compensates them for a portion of their damages and therefore they are not obligated to reimburse State Farm until they receive a full recovery. Since plaintiffs released Bryan from further liability in order to obtain the settlement with Cumis, they are not entitled to receive future compensation from Bryan. Thus, State Farm can only be reimbursed from plaintiffs and has no claim on Bryan. *See* 73 Am. Jur.2d *Subrogation* § 106 (subrogee's rights are subject to limitations placed on the rights of subrogor).

■ In determining the allocation of an amount received by an insured from a third-party tort-feasor, we do not assume that the amount of the settlement is coextensive with the amount of damages incurred. Damages encompass the injuries suffered by a plaintiff. The amount of a settlement almost universally reflects the greatest amount that a plaintiff could have possibly received from a tort-feasor without litigation. As the court in *Janzen v. Land O'Lakes, Inc.*, 278 N.W.2d 67 (Minn. 1979), stated:

> [M]any considerations enter into settlements. Respondent may have wished to avoid possibly protracted and frustrating legal battles; respondent may have needed the money immediately; or respondent may have been pressured into the agreement for other reasons. Thus, the amount of the settlement and compensation may not adequately reflect the actual loss....

*Id.* at 70; *see also Cooper v. Younkin,* 339 N.W.2d 552, 554 (Minn.1983); *Florida Farm Bureau Ins. Co. v. Martin,* 377 So.2d 827, 830–31 (Fla.1979).

One of the considerations which may lead an insured to settle with a third-party tort-feasor for an amount less than its damages is that the tort-feasor is insolvent and less than adequately insured. Here, Bryan was personally insolvent, and his insurance policy was for an amount apparently insufficient to cover the full extent of plaintiffs' claims.[2]

Several courts have noted the importance of a tort-feasor's solvency or adequacy of insurance in influencing the insured's decision to settle and will not allow an insurer to exercise a subrogation claim where the settlement was reached due to the tort-feasor's inability to fully compensate the insured. *See, e.g., Government Employees Ins. Co. v. Graff,* 327 So.2d 88, 91 (Fla. 1976); *Cooper,* 339 N.W.2d at 554.

In light of these principles and prevailing Utah law, we hold that in the absence of specific contractual terms in either the release and settlement or the insurance policy, the insured must be made whole prior to any recovery by the insurer against the tort-feasor. Where the insured settles with the tort-feasor, the settlement amount goes to the insured unless the insurer can prove that the insured has already received full compensation.

Our holding does not undermine the suggestion in *Barnes* that a settlement agreement can effectively allocate the damages it is intended to cover through the use of multiple drafts made out to appropriate parties. Instead, where the language of the release leaves the allocation uncertain and where there is no controlling contractual language to the contrary, the insured should be given the benefit of the doubt as to its damages and the burden will rest with the insurer to prove that the insured has been fully compensated. This procedure has been used by other courts and will result in the most effective implementation of the equitable principles underlying the

doctrine of subrogation. *See, e.g., Automobile Ins. Co. of Hartford v. Conlon,* 153 Conn. 415, 216 A.2d 828 (1966); *Dimick ex rel. Dimick v. Lewis,* 127 N.H. 141, 497 A.2d 1221 (1985).

In the instant case, the amount of plaintiffs' damages is a question of fact which has yet to be determined. There is no specific contractual language in the insurance policy which requires allocation of the settlement amount, nor does the release specify who should receive the $5,510 paid jointly to State Farm and Caldwell. Because the amount of plaintiffs' damages is disputed by the parties, that amount should be set through judicial determination so that the proceeds from Bryan's policy can be equitably distributed. That judicial determination will be factually based, and therefore summary judgment was inappropriate in this case.

State Farm also claims that if it is not entitled to the $5,510 payment from Bryan's insurer, then the releases signed by Hill and Caldwell cannot act to extinguish its subrogation claim against Bryan. Allowing plaintiffs to extinguish State Farm's claims would be tantamount to a breach of the subrogation provision in the insurance policy. If, however, the amount of damages incurred by plaintiffs exceeds the amount paid by Bryan, then State Farm must also demonstrate that it could have recovered the $5,510 from Bryan, absent the releases and without relying on the insurance policy proceeds. *See, e.g., Royal Indem. Co. v. Pharr,* 94 Ga. App. 114, 117, 93 S.E.2d 784, 786 (1956). As we stated in *Barnes:*

> The plaintiff [insurer] to establish a superior equity and thus to be entitled to prevail must present proof which establishes that the damages covered by defendant's settlement were the same or cover those for which the defendant has already received indemnity from plaintiff; otherwise, the receipt of payment from the tort-feasor does not entitle the plaintiff to the return of the payments made by it.

---

**2.** This is evidenced by Cumis's willingness to tender the full policy amount prior to litigation or serious negotiation over the amount of plaintiffs' damages.

*Barnes,* 29 Utah 2d 101, 106–07, 505 P.2d 783, 787 (citations omitted).

 We affirm the trial court's summary judgment in State Farm's claim against Bryan. State Farm's subrogation claims cannot rise above the claims of the subrogees, plaintiffs Hill and Caldwell. Because Hill and Caldwell released Bryan from any further liability, State Farm is unable to pursue its claim against him. Instead, as explained above, State Farm's only recourse is to show either that plaintiffs were fully compensated and thus State Farm is entitled to be reimbursed from Bryan's insurance policy proceeds or that plaintiffs' action in releasing Bryan breached the insurance policy, and if State Farm shows it could have recovered from Bryan, it will be entitled to the proceeds as a matter of equity.

Summary judgment in favor of State Farm on plaintiffs' complaints and on State Farm's counterclaim is reversed. Judgment in favor of Bryan is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ.