**Robert Kent HILL, individually and as personal representative of the heirs of Tamara Elaine Hill, deceased, and Lorin Dean Caldwell, individually and as personal representative of the heirs of Troy Neil Caldwell, deceased, Plaintiffs and Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendants and Appellees.**

No. 900546–CA.

Court of Appeals of Utah.

March 27, 1992.

Roy A. Jacobson, Jr. (Argued), Jackson, Wyo., for plaintiffs and appellants.

Glenn C. Hanni (Argued), Stuart H. Schultz, Strong & Hanni, Salt Lake City, for defendants and appellees.

Before BENCH, GREENWOOD and ORME, JJ.

ORME, Judge:

Plaintiffs Hill and Caldwell appeal from the district court's entry of summary judgment against them on their claim of bad faith and prayer for punitive damages, and the court's denial of their motion for leave to file an amended complaint. We affirm.

## FACTS

On June 6, 1982, a vehicle owned and driven by Kenneth Paul Bryan, who was

legally intoxicated, ran a red light and struck a vehicle owned by plaintiff Lorin Dean Caldwell and driven by his son, Troy. Plaintiff Robert Hill's daughter, Tamara, was a passenger in the Caldwell vehicle. Both Troy and Tamara were killed in the accident. The Caldwell vehicle was insured by defendant State Farm Mutual Automobile Insurance Company. As a result of the accident, the Caldwell car sustained damage of $5,510, which State Farm paid to Caldwell under the collision coverage provision of his policy. The State Farm policy also included a subrogation provision. This provision stated: "Upon payment under this policy ... the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them."

Bryan's vehicle was insured by the CUMIS Insurance Society, Inc. Bryan's CUMIS policy provided liability coverage of $50,000, the full amount of which was offered to Hill and Caldwell in settlement of their wrongful death claims for the deaths of the two teenagers. Hill and Caldwell each hired an attorney to investigate the possibility of litigation against Bryan. After both attorneys concluded that a lawsuit against Bryan would be economically fruitless, Hill and Caldwell decided to accept the $50,000 policy limit, agreeing to divide it equally.

CUMIS refused to deliver the entire $50,000, however, having been notified by State Farm of its subrogation claim of $5,510 for the collision benefits paid to Caldwell. Hill and Caldwell attempted to persuade State Farm to drop its subrogation claim, arguing that $50,000 was inadequate compensation for the deaths of their two children.

State Farm refused to waive its claim and apparently urged Hill and Caldwell to litigate their claims against Bryan in order to obtain a judicial determination of the amount of their damages. Because they determined that the cost of the litigation would exceed the $5,510 they sought, Hill and Caldwell declined to do so. Instead, they proceeded to conclude their negotiations with CUMIS.

Hill and Caldwell each signed a release of claims against Bryan, Bryan's parents, CUMIS, and other potential defendants. In return for their releases, CUMIS tendered $22,245 to Hill and $27,755 to Caldwell.[1] The tender to Caldwell consisted of a check for $22,245 made to Caldwell alone and a check for $5,510 made jointly to Caldwell and State Farm, reflecting State Farm's subrogation claim. The releases expressly recognized that a dispute existed between Caldwell and State Farm over who was entitled to the $5,510. The releases stated that the $5,510 "represents damage to [Caldwell's] automobile and such amount will be made payable by separate check to [State Farm] and [Caldwell], wherein a controversy exists between [State Farm] and [Caldwell] as to who is entitled to the said amount." After failing over the course of a year to reach an accord with State Farm, Hill and Caldwell filed suit against State Farm, seeking, *inter alia*, payment of the $5,510. State Farm in turn counterclaimed against Hill and Caldwell for the $5,510.[2]

## PRIOR PROCEEDINGS

Hill and Caldwell filed a complaint against State Farm on November 18, 1983, alleging that State Farm was not entitled to subrogation because $50,000 did not fully compensate them for the two wrongful

---

1. The parties subtracted the property damage figure, $5,510, from the policy proceeds and divided the remainder between them. The disputed $5,510 was then added back to Caldwell's portion because he was the owner of the damaged vehicle. From all that appears, in so doing Hill and Caldwell did not definitively determine this to be the final allocation as between them. Rather, the arrangement reflected an awareness that Caldwell, as the policy holder, was the primary antagonist of State Farm.

2. State Farm also filed a third-party claim against Bryan for subrogation and indemnity. This claim was dismissed by the district court by virtue of the releases signed by Hill and Caldwell. The dismissal was subsequently affirmed by the Utah Supreme Court. *Hill v. State Farm Mut. Auto. Ins. Co.,* 765 P.2d 864, 869 (Utah 1988). Because this claim is not part of this appeal, further reference to it is omitted from our discussion of the prior proceedings.

deaths. Moreover, Hill and Caldwell contended that State Farm's refusal to acknowledge that the $50,000 CUMIS payment was inadequate, and its refusal to drop its subrogation claim, evidenced bad faith. Hill and Caldwell prayed that State Farm be ordered to pay over to them the $5,510 check from CUMIS, and prayed for an award of punitive damages against State Farm for its bad faith conduct.

State Farm counterclaimed against Hill and Caldwell, alleging that Hill and Caldwell's settlement with Bryan had specifically itemized $5,510 as being for property damage and that State Farm had already paid $5,510 to Caldwell for this damage; accordingly, Caldwell was not entitled to be paid twice for the same damage. Secondly, State Farm alleged that Hill and Caldwell had breached the insurance contract with State Farm by settling with Bryan without State Farm's knowledge or consent. State Farm thus prayed for judgment against Hill and Caldwell for the $5,510 plus interest.

State Farm filed a motion for summary judgment both as to Hill and Caldwell's complaint and its counterclaim against Hill and Caldwell. State Farm argued that it was entitled to the $5,510 as a matter of law for two reasons. First, State Farm again argued that the settlement was "earmarked" as property damages and that Caldwell was not entitled to be paid twice for the same damage. Second, State Farm asserted that it was not bad faith for State Farm to assert a contractual right to subrogation, by notifying CUMIS of its claim for the $5,510.

Hill and Caldwell filed no cross-motion for summary judgment, nor did they otherwise assert that they were entitled to judgment as a matter of law. Rather, they filed only a memorandum in opposition to State Farm's motion for summary judgment. Hill and Caldwell contended that Utah law requires that they be made whole for the deaths of their children before State Farm may recover on its subrogation claim. Hill and Caldwell failed to point out, however, that Utah law places the burden on the insurer to prove that the insured has already been fully compensated and that the insurer is thus entitled to subrogation. *Transamerica Ins. Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783, 787 (1972) (insurer seeking subrogation must prove that insured's settlement covers damages for which insured has already been paid). Accordingly, Hill and Caldwell failed to argue that, in the absence of any showing by State Farm that they had been fully compensated, they should be awarded the $5,510 as a matter of law. Rather, Hill and Caldwell merely argued that whether they were made whole by the $50,000 settlement was a question of fact meriting further adjudication.

The district court granted State Farm's motion for summary judgment on October 22, 1984, and ordered Hill and Caldwell to pay State Farm $5,510 with interest. Hill and Caldwell appealed to the Utah Supreme Court. The Supreme Court reversed the district court's entry of summary judgment in favor of State Farm. *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864 (Utah 1988).

The Court reiterated the general rule that where there are no specific terms to the contrary in the settlement agreement or the insurance contract, the insured must be made whole prior to recovery by the insurer on a subrogation claim. *Id.* at 866. In stating this rule, the Court relied on *Transamerica Ins. Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783 (1972) and *Lyon v. Hartford Accident & Indem. Co.*, 25 Utah 2d 311, 480 P.2d 739, 744 (1971), *overruled on other grounds, Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 (Utah 1985). The Court noted that the question of whether an insured has been made whole is more difficult where the amount of an insured's damages has not been judicially ascertained, but rather the parties have settled, as in the instant case. *Hill v. State Farm*, 765 P.2d at 866. The Court rejected State Farm's contention that Caldwell was being compensated twice for the same damage on the theory that the settlement intended to conclusively allocate $5,510 for property damage which had already been paid to Caldwell. Rather, the Court held that the release clearly noted that a controversy

surrounded the $5,510; thus, the parties had not yet agreed whether the amount was for property damage or to satisfy the wrongful death claims. *Id.* at 867. *See* note 1, *supra.* In the context of a settlement, the Court declared, it is not to be assumed that the amount of an insured's settlement is "coextensive with the amount of damages incurred." *Hill v. State Farm*, 765 P.2d at 867. Rather, where "the release leaves the allocation uncertain, and where there is no controlling contractual language to the contrary, the insured should be given the benefit of the doubt as to its damages and the burden will rest with the insurer to prove that the insured has been fully compensated." *Id.* at 868.

The Court, accepting Hill and Caldwell's argument, stated that the amount of Hill and Caldwell's damages is a question of fact which had not yet been determined. "Because the amount of plaintiffs' damages is disputed by the parties, that amount should be set through judicial determination so that the proceeds from Bryan's policy can be equitably distributed. That judicial determination will be factually based, and therefore summary judgment was inappropriate in this case." *Id.*

The Court also discussed State Farm's claim that Hill and Caldwell's releases of Bryan entitled State Farm to the $5,510 because the releases foreclosed State Farm's right to recover from Bryan. The Court held that State Farm must "demonstrate that it could have recovered the $5,510 from Bryan, absent the releases and without relying on the insurance policy proceeds." *Id.* Therefore, the Court concluded, State Farm had two options for recovering the disputed amount: (1) prove that Hill and Caldwell were fully compensated by the settlement for the deaths of the two children or (2) show Hill and Caldwell's action in releasing Bryan breached the insurance policy and that State Farm could have recovered from Bryan absent the releases. *Id.* at 869.

Shortly after the Supreme Court's remand of the case, and apparently recognizing the insurmountable hurdles set up for it in the Court's opinion, State Farm paid the $5,510, plus interest, to Caldwell. State Farm then moved for summary judgment on Hill's bad faith claim and partial summary judgment against Caldwell on his claim for punitive damages. State Farm argued that Hill had no cause of action against it for bad faith, because Hill was not in privity of contract with State Farm as concerned State Farm's subrogation rights under its policy with Caldwell. As to Caldwell, State Farm argued that Caldwell could not recover punitive damages for bad faith because the claim arose in the context of a first-party insurance claim. Thus, it argued, the alleged bad faith would be a breach of a contractual duty only, for which punitive damages may not be recovered. Following State Farm's motion for summary judgment, Hill and Caldwell filed a memorandum in opposition to State Farm's motion and a motion for leave to file an amended complaint which would allege tortious conduct on the part of State Farm and thereby support an award of punitive damages. On February 7, 1990, the district court denied Hill and Caldwell's motion.

The district court, on March 26, 1990, granted State Farm's motion for summary judgment against Hill and partial summary judgment against Caldwell. The court agreed with State Farm that Hill lacked standing to assert his bad faith claim because he was not in privity of contract with State Farm, and that Caldwell's bad faith claim would not support an award of punitive damages absent an allegation of independent tortious conduct.

Finally, on April 25, 1990, State Farm filed a motion for summary judgment on Caldwell's remaining claim for contractual bad faith. Caldwell filed no opposition to the motion. The district court granted State Farm's motion on June 11, 1990, holding that the issues raised by Hill and Caldwell's claims of bad faith were, and had been throughout the pendency of the action, "fairly debatable." Thus, as a matter of law, State Farm's pursuit of its subrogation claim did not constitute bad faith.

On this appeal, Hill and Caldwell argue that (1) the district court's grant of sum-

mary judgment to State Farm was improper because there are issues of fact surrounding State Farm's conduct and whether or not it evidenced bad faith; (2) the district court erroneously concluded that Hill lacked privity of contract with State Farm; and (3) the district court abused its discretion when it denied their motion for leave to file an amended complaint.[3]

## BAD FAITH

■ We turn first to the district court's grant of summary judgment to State Farm on Hill and Caldwell's claim for bad faith, because our disposition of that claim largely disposes of Hill and Caldwell's other claims as well. In reviewing a grant of summary judgment, "we inquire whether there is any genuine issue as to any material fact and, if there is not, whether the moving party is entitled to judgment as a matter of law." *Arrow Indus., Inc. v. Zions First Nat'l Bank,* 767 P.2d 935, 936 (Utah 1988). In determining whether the trial court correctly held that there were no genuine issues of material fact, "we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party." *Hamblin v. City of Clearfield,* 795 P.2d 1133, 1135 (Utah 1990); *Utah State Coalition of Senior Citizens v. Utah Power & Light Co.,* 776 P.2d 632, 634 (Utah 1989). Moreover, a challenge to summary judgment presents for review only questions of law; we therefore review the trial court's conclusions for correctness, according them no particular deference. *Bonham v. Morgan,* 788 P.2d 497, 499 (Utah 1989).

■ Hill and Caldwell urge that the district court erred in concluding as a matter of law that State Farm's overzealous pursuit of its subrogation claim did not constitute bad faith. It is well settled under Utah law that an insurer is entitled to pursue a claim for subrogation so long as that claim is "fairly debatable." *Callioux v. Progressive Ins. Co.,* 745 P.2d 838, 842 (Utah App.1987). In *Callioux,* this court stated that " '[w]hen a claim is fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law.' " *Id.* (quoting *McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 437 So.2d 86, 90 (Ala.1983)). The policy underlying the bad faith test was enunciated by the Utah Supreme Court in *Western Casualty & Sur. Co. v. Marchant,* 615 P.2d 423, 427 (Utah 1980): "It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts." *Id.* In the instant case, State Farm sought reimbursement for its $5,510 property damage payment out of the $50,000 CUMIS policy proceeds paid to Hill and Caldwell. In order for State Farm's conduct to be in good faith, its right to subrogation must have been a fairly debatable matter, either factually or legally.

State Farm argues on appeal that, because the Supreme Court remanded the case and characterized the amount of Hill and Caldwell's damages as a factual issue, the Court's decision amounted to a determination that State Farm's claim for subrogation was "fairly debatable," thereby precluding Hill and Caldwell's bad faith claim. We believe this contention goes too far; the fact that the Court remanded the case does not necessarily mean it believed the issue of damages was fairly debatable. Rather, we think it likely that the Court spoke in the terms it did because that is precisely the relief which Hill and Caldwell requested. This conclusion, however, is equally fatal to Hill and Caldwell's bad faith claim. Because Hill and Caldwell urged the Court to conclude that the amount of their damages and, as a result,

---

3. In addition, a portion of Hill and Caldwell's brief appears to be devoted to arguing that State Farm is not entitled to subrogation and that material issues of fact still exist surrounding this issue. We will not address these contentions for two reasons. First, especially after the Supreme Court's prior decision in this case, the applicable legal standard on subrogation is perfectly clear: State Farm would have to prove Hill and Caldwell were made whole by the settlement before there could be any recovery by State Farm. *Hill v. State Farm,* 765 P.2d at 868. Second, any question regarding State Farm's entitlement to recovery was rendered moot by State Farm's tendering of the $5,510 with interest to Caldwell following remand.

State Farm's entitlement to subrogation, posed legitimate factual issues, they will not now be heard to argue that State Farm's claim was not "fairly debatable."

■ Hill and Caldwell have consistently argued throughout the course of this litigation that the questions surrounding their damages and State Farm's subrogation claim raised disputed issues of material fact. This is tantamount to conceding that the issues were fairly debatable. Moreover, Hill and Caldwell never moved the district court for summary judgment on their claim to the $5,510, as one would expect if the matter were not fairly debatable. Upon State Farm's initial motion for summary judgment, Hill and Caldwell filed no cross-motion for summary judgment; rather they opposed State Farm's motion for summary judgment by arguing that State Farm's entitlement to the $5,510 was a disputed factual issue that should be resolved at trial.[4]

On appeal to the Supreme Court, Hill and Caldwell again urged the Court to find that the amount of their damages was a disputed issue of material fact and, therefore, the district court should not have granted summary judgment. The Supreme Court accepted Hill and Caldwell's argument and remanded the case for a determination of their damages and, correspondingly, who was entitled to the $5,510. When, after remand, State Farm tendered the $5,510 to Hill and Caldwell, the matter seemingly was resolved.

Hill and Caldwell now maintain, however, that State Farm's tendering of the $5,510 did not end the matter. They argue that the issues surrounding State Farm's subrogation claim were never fairly debatable and thus State Farm's claim was made in bad faith. We cannot agree for the reason that Hill and Caldwell have at every prior step in this litigation urged the court to conclude that the amount of their damages and State Farm's entitlement to subrogation were disputed factual issues. They cannot now be heard to argue that State Farm's subrogation claim was not fairly debatable when that argument is contrary to all that has gone before in the lengthy history of this case.

## HILL'S PRIVITY OF CONTRACT

Hill and Caldwell also appeal the district court's conclusion that Hill lacked standing to assert his bad faith claim against State Farm because he was not in privity of contract with State Farm. Our conclusion that Hill and Caldwell's prior inconsistent arguments preclude them from asserting a bad faith claim renders the question of Hill's privity of contract with State Farm irrelevant.

## DENIAL OF MOTION TO AMEND

■ Lastly, Hill and Caldwell contend that the district court abused its discretion when it denied their motion for leave to file an amended complaint. Hill and Caldwell attempted to amend their complaint to allege tortious conduct that would support their prayer for punitive damages. The proposed complaint alleged that, by refusing to relinquish its subrogation claim, State Farm intentionally interfered with Hill and Caldwell's settlement with CUMIS, and this conduct constituted intentional interference with contract and economic relations. The district court denied Hill and Caldwell's motion, declaring that the seven

---

4. If Hill and Caldwell had filed a cross-motion for summary judgment, the Supreme Court would have been in a position to award the $5,510 to Hill and Caldwell as a matter of law, if it concluded that State Farm failed to meet its burden of proving Hill and Caldwell were not made whole for two wrongful deaths by the $50,000 settlement. Moreover, had the Court so concluded, it might well have gone on to address the question of whether State Farm's pursuit of their claim was in bad faith and thereby ended this litigation. Thus, the conclusion we reach is bolstered by principles of judicial estop-pel, a doctrine which seeks to prevent a party in legal proceedings from taking a position, pursuing that position to fruition, and later returning to attack the validity of the prior position or the outcome flowing from it. *Condas v. Condas,* 618 P.2d 491, 496 (Utah 1980); *Occidental/Nebraska Fed. Sav. Bank v. Mehr,* 791 P.2d 217, 220 (Utah App.1990). The purposes underlying the doctrine include avoiding inconsistency, duplicity, and waste of time. *Seattle–First Nat'l Bank v. Marshall,* 31 Wash.App. 339, 641 P.2d 1194, 1197 (1982).

year-old case should proceed "with dispatch."

After a responsive pleading has been filed, and the case placed on the trial calendar, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Utah R.Civ.P. 15(a). A trial court's discretion to deny a motion for leave to amend is broad and its decision will not be disturbed absent an abuse of discretion. *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983); *Regional Sales Agency, Inc. v. Reichert*, 784 P.2d 1210, 1216 (Utah App.1989); *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah App.1988).

When granting or denying a motion to amend, Utah courts have focused on three factors: "the timeliness of the motion; the justification given by the movant for the delay; and the resulting prejudice to the responding party." *Reichert*, 784 P.2d at 1216. In *Reichert*, this court noted that appellate courts have upheld the denial of a motion to amend "where the amendment is sought late in the course of the litigation, where there is no adequate explanation for the delay, and where the movant was aware of the facts underlying the proposed amendment long before its filing." *Id.* Moreover, although leave to amend is liberally allowed in the interest of justice, justice is not necessarily served by allowing amendments alleging new and different causes of action on the eve of trial. *Girard*, 660 P.2d at 248; *Chadwick*, 763 P.2d at 820.

To the extent that Hill and Caldwell sought by their amendment to inject a new and different cause of action into the case, it is clear that the district court did not abuse its discretion. The amendment was sought almost six years into the litigation, after summary judgment had been granted once by the district court, an appeal heard

by the Utah Supreme Court, and a second motion for summary judgment filed by State Farm with the district court. No adequate explanation was given for the delay in filing the motion to amend. Lastly, Hill and Caldwell clearly have been aware for the past six years of the facts underlying the proposed claim, because it was based on the same facts underlying their original bad faith claim. Hill and Caldwell's motion to amend thus suffers from all three of the defects listed by the *Reichert* court. Therefore, we cannot conclude that the district court abused its discretion when it denied Hill and Caldwell's motion to amend.

■ Alternatively, to the extent that Hill and Caldwell's proposed intentional interference claims are merely a "clarification" of the bad faith claim,[5] our conclusion that Hill and Caldwell may not maintain their bad faith claim renders the denial of their intentional interference claims beyond reproach. The bad faith and the intentional interference claims are all grounded upon State Farm's unreasonable pursuit of its subrogation claim. Moreover, the legal tests underlying these claims are essentially similar. The test for bad faith centers on whether State Farm pursued a claim that was not "fairly debatable." *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah App.1987). A finding of intentional interference with contract requires conduct which "intentionally and improperly interferes with the performance of a contract." *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982) (quoting Restatement (Second) of Torts § 776 (1979)). Intentional interference with economic relations requires proof of intentional interference "for an improper purpose or by improper means." *Id.* at 304.

Because we have concluded that Hill and Caldwell's posture in this litigation has

---

5. This was the position taken by Hill and Caldwell before the district court. After remand by the Supreme Court, State Farm moved the district court for summary judgment on the punitive damages claim, arguing that punitive damages were not available because no tortious conduct had been alleged. Hill and Caldwell opposed the motion by contending that their original complaint of bad faith had sufficiently claimed intentional interference as well, because the material allegations and elements were the same. Hill and Caldwell also propounded this "mere clarification" view of their proposed amendment in oral argument before this court.

amounted to a concession that State Farm's subrogation claim was fairly debatable, we are hard pressed to see how Hill and Caldwell could argue that the pursuit of a fairly debatable claim was "improper." The bad faith and intentional interference claims turn upon sufficiently similar considerations that our earlier conclusion that Hill and Caldwell have conceded the bad faith issue compels the conclusion that they have conceded the intentional interference claims as well. Thus, the district court correctly denied their motion to amend.[6]

## CONCLUSION

Hill and Caldwell are precluded from asserting that State Farm acted in bad faith because Hill and Caldwell have consistently argued throughout this litigation that the issues surrounding State Farm's subrogation claim were disputed issues of material fact. This is tantamount to conceding that the issues were fairly debatable. Our conclusion that Hill and Caldwell may not assert their bad faith claim renders the question of Hill's privity of contract with State Farm irrelevant. Lastly, as regards Hill and Caldwell's motion to amend, to the extent that Hill and Caldwell sought to inject a new cause of action into the case, it is clear that the district court did not abuse its discretion in denying that motion. Alternatively, to the extent that Hill and Caldwell's proposed claims served merely to clarify their bad faith claim, our conclusion that they may not maintain their bad faith claim renders denial of the motion beyond reproach. The judgment appealed from is affirmed.

BENCH and GREENWOOD, JJ., concur.

---

**6.** Given that Hill and Caldwell's motion to amend their complaint was properly denied on this basis, it follows that Hill and Caldwell's brief final argument, that the grant of summary judgment was premature and they should be afforded additional time to conduct discovery, is unavailing.