Belknap
No. 95-448

DAVID V. LUTKUS
F/N/F BRANDON LUTKUS

v.

LINDA J. LUTKUS & a.

DAVID V. LUTKUS
(BLUE CROSS/BLUE SHIELD OF NEW HAMPSHIRE)

v.

LINDA J. LUTKUS & a.

January 23, 1997

*The Law Office of Rodney L. Stark, P.A.*, of Manchester (*Sherry M. Hieber* on the joint brief with defendant Linda J. Lutkus and orally) and *Peabody & Arnold*, of Boston, Massachusetts (*Robert Monaghan* on the joint brief with defendant Linda J. Lutkus), for plaintiff David V. Lutkus.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles, Jr.* on the joint brief with plaintiff David V. Lutkus and orally), for defendant Linda J. Lutkus.

*Branch & Greenhalge, P.A.*, of Concord (*Frederic T. Greenhalge* on the brief and orally), for Blue Cross/Blue Shield of New Hampshire, as subrogee of plaintiff David V. Lutkus.

HORTON, J. This appeal, involving four consolidated actions arising from a motor vehicle accident in which a minor was severely injured, requires us to determine whether: (1) the Superior Court (*O'Neil*, J.) erroneously set aside a default judgment against

defendant Linda Lutkus; and (2) the Superior Court (*Perkins*, J.) erroneously approved a settlement on behalf of minor Brandon Lutkus and ruled that Blue Cross/Blue Shield of New Hampshire (Blue Cross/Blue Shield) was not entitled to any recovery as subrogee for the medical bills it paid on behalf of Brandon Lutkus. To resolve the second issue, we must consider the scope and applicability of *Dimick v. Lewis*, 127 N.H. 141, 497 A.2d 1221 (1985), in which we articulated a formula for allocating the proceeds of a "reduced recovery" settlement to the injured minor and to the medical insurer as subrogee of the minor's parent. *Id.* at 144-45, 497 A.2d at 1223-24. We affirm the decision striking the default judgment, vacate the order denying recovery to Blue Cross/Blue Shield as subrogee, and remand.

In December 1992, an automobile driven by Linda Lutkus, the mother of Brandon Lutkus, collided with a vehicle operated by David Chamberlain. The negligence of both Linda Lutkus and David Chamberlain contributed to the accident. Brandon Lutkus, then five years old and a passenger in his mother's vehicle, suffered severe and permanent injuries as a consequence of the accident. His resulting medical bills of approximately $183,000 were paid by Blue Cross/Blue Shield pursuant to an insurance policy with David Lutkus, Brandon's father.

In January 1994, counsel for Brandon Lutkus entered into settlement negotiations with Geico Insurance (Linda Lutkus' insurer) and Allstate Insurance Company (David Chamberlain's insurer) to recover for alleged damages of $3,630,042: $2,440,078 for Brandon's economic loss; $1,000,000 for Brandon's pain and suffering; $183,000 for medical bills; and $6,964 for out-of-pocket expenses incurred by David Lutkus. The negotiations subsequently produced a total settlement of $400,000, with Geico Insurance agreeing to pay the applicable policy's liability limit of $300,000 and Allstate Insurance Company agreeing to pay the relevant policy's liability limit of $100,000.

Prior to the settlement, Blue Cross/Blue Shield became concerned that its interests were not being protected and therefore commenced subrogation actions in the name of David Lutkus against Linda Lutkus and David Chamberlain. In both actions, Blue Cross/Blue Shield sought to recover the $183,000 in medical expenses that it had paid on behalf of Brandon.

When Linda Lutkus failed to timely appear in the Blue Cross/Blue Shield subrogation action against her, the superior court, by order dated April 5, 1994, entered judgment by default in an amount exceeding $183,000. Linda Lutkus promptly moved to strike the

default and to allow late entry of appearance, but the court denied the motion without prejudice to a subsequent motion for the same. relief. In May 1994, Linda Lutkus filed a renewed motion to strike the default and to enter late appearance in the Blue Cross/Blue Shield action against her. In support of the renewed motion, Linda Lutkus submitted affidavits from her attorney, from Brandon's attorney, and from a representative of her insurer, which set forth: (1) the confusion generated by the nature of the Blue Cross/Blue Shield action; (2) her prompt efforts to strike the default upon learning of its entry; and (3) her probable defenses to the action based on *Dimick*, 127 N.H. at 145, 497 A.2d at 1224. In addition, Brandon Lutkus intervened to argue that denial of the motion would be inequitable because he was not responsible for the default judgment, but would suffer in his ultimate recovery if Blue Cross/Blue Shield received complete recovery.

In August 1994, the superior court granted Linda Lutkus' motion to strike the default judgment, finding that "the parties involved acted in good faith" and "in a diligent manner" and that Linda Lutkus failed to respond to the Blue Cross/Blue Shield action "through a combination of mistake and the difficulties inherent when numerous attorneys represent different family members." The court also concluded that the default judgment should be set aside in order to resolve all the claims arising from Brandon's injuries in a "final settlement" and in "an equitable manner."

In September 1994, David Lutkus, as next friend of Brandon and on his own behalf, commenced actions against Linda Lutkus and David Chamberlain. After these actions were consolidated with the two Blue Cross/Blue Shield subrogation actions, David Lutkus petitioned the superior court to approve the $400,000 settlement. *See* RSA 464-A:42 (Supp. 1996); SUPER. CT. R. 111. The petition set forth the $3,630,042 in damages (including $183,000 in medical bills) that were claimed by Brandon and his father, identified attorney's fees of 25% plus expenses of $12,354, and requested a hearing under *Dimick* "to determine whether Blue Cross is entitled to a proportionate share of its [claim] as reimbursement for medical bills."

Following Blue Cross/Blue Shield's objection to the petition, the superior court held a hearing on April 24, 1995, during which Blue Cross/Blue Shield first raised the argument that the settlement did not capture all available insurance. According to Blue Cross/Blue Shield, the availability of uninsured motorist coverage resulted in the inapplicability of the allocation formula set forth in *Dimick*, 127 N.H. at 145, 497 A.2d at 1224, and instead required the application of our holding in *Roy v. Ducnuigeen*, 130 N.H. 24, 26-27, 532 A.2d

1388, 1390 (1987). Brandon Lutkus, in contrast, contended that the case was governed, not by the allocation formula articulated in *Dimick*, but rather by his view of the "general rule set forth in [*Dimick*], which precludes subrogation when the insured's total recovery is less than the insured's actual loss."

In orders dated May 15 and May 31, 1995, the superior court ruled that the *Dimick* allocation formula was inapposite and that Blue Cross/Blue Shield was not entitled to recover its pro rata share of medical bills. The court apparently reasoned that the settlement simultaneously represented a "full recovery" *from available sources of funds*, but not a "full recovery" *to Brandon Lutkus and his father* because the dollar value of their claimed damages far exceeded the amount of the settlement. Concluding that the settlement was therefore not a "reduced recovery" for purposes of *Dimick* allocation, the superior court approved the $400,000 settlement on the following terms: (1) allowing attorney's fees of 25% of the settlement, plus litigation expenses exceeding $12,000; and (2) awarding the balance to David and Linda Lutkus as co-trustees of an irrevocable trust for the benefit of Brandon. The orders approving the settlement neither determined the full extent of the losses incurred by Brandon Lutkus nor allocated any proceeds of the settlement to David Lutkus (or Blue Cross/Blue Shield as his subrogee) for medical expenses. This appeal followed.

Blue Cross/Blue Shield argues that the superior court erred in: (1) striking the default judgment against Linda Lutkus; (2) denying Blue Cross/Blue Shield any recovery as subrogee; (3) refusing to rule on Blue Cross/Blue Shield's requests for findings and rulings with respect to the petition for approval of the settlement; (4) failing to hold a "full hearing on the merits" regarding the petition for approval of the settlement; and (5) releasing $175,000 of the settlement funds to counsel for Brandon Lutkus for distribution despite Blue Cross/Blue Shield's claim that it is entitled to recover in excess of $225,000 ($183,000 plus interest).

## I. Default Judgment

■ We review the superior court's grant of Linda Lutkus' motion to strike the default judgment under the abuse of discretion standard, and we will reverse its decision only if the court abused its discretion or erred as a matter of law. *See Barton v. Hayes*, 141 N.H. 118, 120, 677 A.2d 694, 695 (1996). Furthermore, a trial court's factual finding as to the occurrence of accident, mistake, or misfortune for purposes of striking a default judgment is "conclusive upon this court, unless unsupported by the evidence." *Jamieson, Inc. v.*

*Copeland Coating Co.*, 126 N.H. 101, 102-03, 489 A.2d 613, 615 (1985).

In this case, the superior court struck the default judgment based on its findings that Linda Lutkus acted diligently and in good faith, that the default resulted from both mistake and "the difficulties inherent when numerous attorneys represent different family members," and that a default judgment against Linda Lutkus would impede the equitable resolution and final settlement of the various claims arising from Brandon's injuries. Finding no abuse of discretion or error of law in the superior court's analysis, we affirm its decision to set aside the default judgment.

## II. *Blue Cross/Blue Shield's Right of Subrogation*

We begin our review of the superior court's complete denial of Blue Cross/Blue Shield's subrogation rights with an examination of our reasoning and holding in *Dimick*, 127 N.H. at 144-45, 497 A.2d at 1223-24. In *Dimick*, a minor received serious injuries in a motor vehicle accident; the family's medical insurer paid the ensuing medical expenses pursuant to an insurance plan with the minor's father. *Id.* at 142-43, 497 A.2d at 1222. The father, as the minor's next friend and on his own behalf, brought an action against the responsible driver for the injuries and expenses that resulted from the accident. *Id.* at 143, 497 A.2d at 1222. The plaintiffs in *Dimick* subsequently settled the action at the limit of the responsible driver's insurance policy, but far below the amount of damages claimed in their writs. *Id.* at 143-44, 497 A.2d at 1222-23. In granting the petition to approve the settlement, the superior court ruled that the medical insurer had no right of subrogation as to the medical expenses "because the injured minor was not made whole by his recovery from the tortfeasor." *Id.* at 142, 497 A.2d at 1222. We reversed, expressly rejecting the insured-first rule employed by the superior court in the context of a "reduced recovery" settlement. *Id.* at 144-45, 497 A.2d at 1223-24. Instead, we instructed the superior court to "make separate findings as to the extent of loss incurred by the minor plaintiff and by his parent" and to "determine the amount of the net proceeds to which [the medical insurer] is entitled on a pro-rata basis, proportionate to the plaintiff-father's share of the total settlement." *Id.* at 145, 497 A.2d at 1224.

■ The approach we adopted in *Dimick* specifically recognized that the medical insurer was subrogated to the parent's, not the minor's, right to recover medical expenses. *Id.*; *see Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 141, 459 A.2d 226, 228 (1983). Furthermore, *Dimick* precluded the minor and parent from under-

mining the insurer's rights by unilaterally allocating a disproportionately small part of the settlement to the parent. *Dimick*, 127 N.H. at 145, 497 A.2d at 1224. Thus, under *Dimick*, "the respective shares allocated to parent and minor should bear the same proportions to the total settlement that the full loss of each would have borne to a complete recovery." *Roy*, 130 N.H. at 26, 532 A.2d at 1389. The rights of the subrogee are then "limited to the amount of the parent's reduced recovery that is attributable to the medical expenses that the subrogee has paid," with pro rata reductions for legal expenses. *Id.*

■ Despite the marked similarity between *Dimick* and this case, the superior court held that the settlement on behalf of Brandon Lutkus was not the type of "reduced recovery" settlement to which the *Dimick* allocation formula applies. Indeed, the superior court's denial of Blue Cross/Blue Shield's subrogation rights and its failure to award any settlement proceeds to David Lutkus for *his* claims reflect the insured-first and one-sided allocation principles that *Dimick* squarely rejected. *Dimick*, 127 N.H. at 144-45, 497 A.2d at 1223-24. We therefore conclude that the superior court erred in its interpretation of *Dimick* and in its resulting denial of any recovery to Blue Cross/Blue Shield as subrogee of David Lutkus. We note that application of the *Dimick* formula would require the trial court to make separate findings regarding the full value of the claims of Brandon Lutkus and his father; ascertain the amount of funds available for allocation; determine a reasonable figure for attorney's fees, including a reasonable figure for the fees attributable to the recovery's component for medical expenses; and employ the formula set forth in *Dimick* to determine the appropriate allocation to Blue Cross/Blue Shield as subrogee.

Blue Cross/Blue Shield, not satisfied with the allocated recovery provided by *Dimick*, contends that the asserted availability of uninsured motorist coverage, *see* RSA 264:15 (1993), entitles it to *full* recovery for the medical expenses it paid. Although Blue Cross/Blue Shield raised this issue in a general manner below, the parties never provided the superior court with the insurance contracts that arguably govern this contention. *See, e.g., Turner v. St. Paul Prop. & Liab. Ins. Co.*, 141 N.H. 27, 28, 676 A.2d 109, 110 (1996) (reviewing relevant insurance policy's terms and definitions regarding uninsured motorist coverage); *Concord Gen. Mut. Ins. Co. v. Mitchell*, 138 N.H. 229, 231-32, 637 A.2d 903, 904-05 (1994) (considering applicable insurance policy's specific terms and conditions regarding "uninsured" automobile). "Without an adequate record to support arguments raised before us, we cannot resolve the

issue." *Thone v. Liberty Mutual Ins. Co.*, 130 N.H. 702, 704, 549 A.2d 778, 779 (1988). Accordingly, we express no opinion on the availability of uninsured motorist coverage or on the significance of any such coverage to Blue Cross/Blue Shield's subrogation rights.

In addition, we express no opinioin as to whether Blue Cross/Blue Shield bore the burden in the trial court of producing the relevant insurance contract to support its subrogation claim, or whether the proponent of the settlement agreement bore that burden to support the petition for approval of the settlement. This issue has not been briefed or argued by the parties. Accordingly, we leave it to the trial court upon remand to determine whether the record should be reopened to allow submission of the insurance contract, and, if not, to determine the consequences that should flow from the failure to provide the policy.

We also decline to address Blue Cross/Blue Shield's other arguments in support of full subrogation, including its assertion that Superior Court Rule 111 mandates undiminished recovery of medical expenses by a minor's parent (and therefore by the parent's subrogee). Because Blue Cross/Blue Shield failed to present these arguments to the superior court, "it would be improper for us to consider them now." *Bisson v. University of New Hampshire*, 133 N.H. 353, 360, 578 A.2d 320, 325 (1990).

### III. Evidentiary Hearing and Requests for Findings and Rulings

Blue Cross/Blue Shield argues that the trial court erred by failing to hold a "full hearing on the merits" regarding the petition for approval of the settlement. The trial court found that at the April 24, 1995, hearing, "*all* counsel agreed that a further hearing was unnecessary." Our review of the transcript of the April 24, 1995, hearing reveals ample support for the trial court's finding. We conclude, based upon our review of the record, that counsel for Blue Cross/Blue Shield waived any right to a further evidentiary hearing.

Blue Cross/Blue Shield also argues that the trial court erred by not ruling upon its requests for findings of fact and rulings of law. Blue Cross/Blue Shield filed such requests shortly after the hearing. The trial court declined to rule upon the requests, in part because it stated that the facts necessary to support its order could be found in the record of the hearing and in its order.

Because we vacate the trial court's order, which in part formed the basis for its decision not to rule upon Blue Cross/Blue Shield's requests, we need not decide this issue. Upon remand, the trial court may again consider the requests for findings and rulings filed by the parties.

In conclusion, we vacate the superior court's order approving the settlement and denying subrogation and remand for further proceedings consistent with this opinion. We leave it to the trial court upon remand to determine whether it can make the findings and rulings required in light of this opinion upon the record before it, or whether it will require additional evidence from the parties. We also vacate the superior court's order releasing settlement funds for distribution and direct the court to postpone any distribution of funds currently in dispute until the findings and rulings required by this opinion are made.

*Affirmed in part; vacated in part; remanded.*

All concurred.