ERKMAN v. CIVIL SERVICE COMMISSION OF PROVO CITY et al.

No. 7120. Decided October 7, 1948. (198 P. 2d 238.)

See 43 C. J., Municipal Corporations, sec. 1350; 10 Am. Jur. 931. Constitutionality and construction of statute for court review of civil service commission order, note, 125 A. L. R. 263.

*Christensen & Christenson,* of Provo, for appellant.

*Martin M. Larson,* of Salt Lake City, and *Dallas H. Young,* of Provo, for respondents.

WOLFE, Justice.

Appeal by the plaintiff from an order and judgment of the Fourth District Court which vacated a writ of certiorari theretofore issued by it to review a decision of the Civil Service Commission of Provo, hereafter referred to as defendant commission. The effect of the lower court's order vacating the writ of certiorari was to affirm the order of the defendant commission which in turn upheld the discharge of plaintiff by the chief of Police of the City of Provo.

The scope of review on certiorari is limited by the terms of Section 104-67-8, U. C. A. 1943, which provides as follows:

"The review upon this writ [certiorari] cannot be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer."

And Section 15-9-21, U. C. A. 1943, provides that:

"All persons in the classified civil service may be removed from office or employment by the head of the department for misconduct, incompetency or failure to perform his duties or failure to observe properly the rules of the department, but subject to appeal by the aggrieved party to the civil service commission. Any person discharged may within five days from the issuing by the head of the department of the order discharging him appeal therefrom to the civil service commission, which shall fully hear and determine the matter. The discharged person shall be entitled to appear in person and to have counsel and a public hearing. *The finding and decision* of the civil service commission upon such hearing shall be certified to the head of the department from whose order the appeal is taken, and *shall be final,* and shall forthwith be enforced and followed by him." (Italics added.)

The judgment of the district court was based solely on the record of the hearing before the Civil Service Commis-

sion on plaintiff's appeal to that commission from his discharge by the Chief of Police. Since our action on this appeal will likewise be based altogether on that same record, we may treat this for the purpose of simplicity as if it were a direct appeal from the defendant commission to this court, although technically the question before us is whether the district court erred in refusing to set aside the order of the defendant commission. But that question depends upon whether the defendant commission failed regularly to pursue its authority, or, in other words, whether it acted arbitrarily, or, stated still another way, without basis of reason.

If the defendant commission's action was based upon reason, with evidence to support it, the judgment of the district court is correct and we must affirm. If the action of the commission is not based on reason, i. e. is arbitrary, we must reverse the district court. But as said before, since our conclusion must necessarily depend on the record of the proceedings before the defendant commission, and except as our judgment will have to operate on the judgment of the district court, we consider the case is if the appeal were directly from the defendant commission to this court.

Plaintiff's discharge was for conduct evincing disrespect for a superior officer and conduct evincing disrespect for a fellow officer, and came as a result of his appearance before the City Commission of Provo on June 19, 1946, at which he demanded the removal of Chief of Police Mower and Sgt. Loveless, a member of the force. The meeting was a public one and was attended by representatives of the press.

The evidence adduced at the hearing before defendant commission established that during the war years a practice had grown up within the Provo City police force of taking tires which were so badly worn as to be no longer usuable on emergency vehicles, and placing them in the hands of persons not entitled to have them. Although there

was no evidence that any member of the police force personally profited from these transactions, the city of Provo thus lost whatever value such tire carcasses had, either as "turn-ins" on new tires or as carcasses fit to be recapped and used on non-emergency vehicles.

Plaintiff, who had been a member of the police force since May, 1942, except for a two-year period during which he was a member of the armed forces, was aware of this practice, but made no complaint of it until after he was discharged from the force as an economy measure on December 31, 1945. (That discharge is not the one involved in this appeal. After his discharge as an economy measure plaintiff had instituted mandamous proceedings to compel his reinstatement on the police force. Those proceedings having been determined in his favor, he was restored to active duty on May 21, 1946.)

During the spring of 1946, and before his reinstatement, plaintiff, upon his own initiative, conducted an investigation into the affairs of the police department with particular reference to the tire transactions above mentioned, and reported the results thereof to the city commission. The commission thereupon conducted an investigation culminating in a public hearing about May 20, 1946, which was attended by plaintiff, Chief Mower, Sgt. Loveless, a representative of the OPA, representatives of various tire dealers, and other members of the police force. All persons there were given an opportunity to make statements and charges, and to ask and answer questions of the others.

Although it appears that Sgt. Loveless was primarily responsible for the tire transactions, and that Chief Mower had been derelict in his duty in failing to halt such practices although he was aware of them, the city commission apparently did not regard the offenses as being so serious as to require the removal of the respective officers.

Thereafter, plaintiff was invited by the acting mayor to attend a public meeting of the city commission to be held

on June 19, 1946. At that meeting he was invited to make a statement, and he thereupon demanded the removal of Mower and Loveless for their admitted parts in the tire transactions. It was plaintiff's statement at this meeting which was the basis of his discharge for cause, which is the discharge here involved.

Plaintiff advances three propositions as showing that the action of defendant commission was unreasonable, arbitrary, and capricious. The first is that he was denied due process of law because the specification of charges filed with defendant commission by Chief Mower set forth that plaintiff appeared before the city commission and charged Mower and Loveless with misappropriation of public funds, whereas the evidence showed, and defendant commission found, that he merely demanded the removal of those officers for the part they admittedly played in the tire transactions. The second contention is that the evidence adduced before the commission does not support the charges made against plaintiff. These first two propositions may be conveniently discussed together.

As to the first contention, we think the specification of charges filed with defendant commission sufficiently informed plaintiff that the particular conduct upon his part which would be relied upon to support the order discharging him was his appearance before and statement to the city commission on June 19, 1946. Plaintiff cannot complain that the evidence failed to show that he was guilty of making a charge as serious as that set forth in the specification. Plaintiff had notice that his conduct before the city commission on June 19, 1946 would be called into question, and he had an opportunity to be heard and to furnish any explanation or proof which he cared to. He admitted that at that meeting he had demanded the removal of Mower and Loveless.

Nor is there any merit to plaintiff's contention that the evidence failed to sustain the charges of the Chief of Police

as grounds for dismissal. There is evidence that plaintiff and Mower had had personal difficulties prior to January 1, 1946; that plaintiff had interceded with mayor-elect Anderson to oppose the appointment of Mower as Chief of Police; that plaintiff had been aware of the misappropriation of tires prior to his first discharge; that plaintiff in undertaking an investigation of affairs of the police force on his own initiative was not influenced by unselfish motives of clearing up an unwholesome situation, but for the selfish purpose of showing that he had a better right to be retained on the force than certain other officers. From this, defendant commission could reasonably find, since plaintiff had already given to the city commission all the information he had concerning affairs in the police department, that when he appeared before the city commission on June 19, 1946, his purpose in demanding the removal of Loveless and Mower was to embarrrass them publicly and to create lack of discipline and disorder on the police force; that he was motivated by a desire for revenge for his first discharge from the force. The evidence sufficiently supports the finding of defendant commission that by appearing before the city commission on June 19, 1946 and publicly demanding the removal of Mower and Loveless, plaintiff was guilty of such conduct.

In saying what we have, we do not intend to convey the idea that members of the police force, including the Chief of Police, are by virtue of their position to be insulated from criticism for practices involving even petty conversion of public property. Public officers, though innocent of any wrongful intent, all too often fail to realize that they are servants of the people, endowed with a public trust, and they should be most zealous to conduct themselves in accordance with that trust. The best way to do that is to practice scrupulousness in the smaller as well as the larger matters. The commission could find, however, in this case that the conversions, if such they could be termed, did not merit the public denunciation given

them by the plaintiff, or at least not his demand for the removal of the Chief of Police and his fellow officer, Loveless. A less vindictive approach to the problem than that taken by plaintiff would have been more indicative of a desire to improve the public service, and less of a desire to "get" those with whom the plaintiff was at odds. It lies with the commission to weigh all the factors in the case, the motives of the plaintiff in his demand before the city commission that Mower and Loveless be discharged, the motives of Mower in bringing charges and ordering plaintiff's dismissal, and the effect on the morale of the police force if plaintiff were retained as compared to the effect on that morale if he were dismissed. All these matters were for the commission and unless its decision is not based on reason we cannot disturb it.

The final contention of plaintiff is that no proper findings of fact were made by defendant commission as required by Section 15-9-21, U. C. A. 1943, and Rule XII of the Rules and Regulations of Civil Service Commission, Provo City, Utah. The substance of this argument is that after defendant commission conducted a hearing on plaintiff's discharge the said commission voted to sustain Chief Mower's order of discharge and requested the city attorney of Provo to prepare findings of fact; that thereafter the city attorney did prepare findings of fact; and that such findings were thereafter signed by two members of defendant commission, at separate times, and not at a time when defendant commission was in session. Plaintiff contends that such findings were a nullity on the grounds that they were not prepared by the commission and were not adopted or approved in a regular business meeting, but were signed by the members individually. In this argument there is no merit. Assuming without deciding that failure on the part of defendant commission to make formal written findings of fact would be a fatal error, requiring a new hearing, there was no such failure here.

It is the custom in courts of law, at least in this jurisdiction, for the court to ask counsel for the prevailing party to draw proposed findings of fact. That practice is so general as to be said to be the universal practice in this jurisdiction. Yet it would not be seriously con tended that such proposed findings, when approved and adopted by the court, are not proper findings of fact sufficient to satisfy the statutory requirement in that regard. There is no good reason why the same procedure should not be followed by the Civil Service Commission. In fact, there are more compelling reasons for upholding this practice in proceedings before the boards and commissions. The commissioners, generally being laymen, are not ordinarily skilled in preparing papers of this kind, and when the drawing of findings of fact by counsel for the prevailing party might be a relatively simple matter, the same matter might be extremely difficult for members of. the commission. And since procedure before the commission is, in general, considerably less formal than court procedure, there is no apparent reason for holding commission procedure to more formal standards in the matter of making findings of fact.

Nor is it material that the defendant commission did not meet in formal session to adopt the findings of fact. To require such a formality would bind the commission to considerably greater formal exactitude than binds the highest, and assumedly the most formal tribunal of this state. The members of this court do not meet in formal session to approve proposed opinions. There is no apparent reason to impose upon the commission the burden of acting in a more formal manner. It is sufficient if a majority of the commission signs the findings.

On the record before us it cannot be said that the action of the defendant commission, was arbitrary, capricious or unreasonable, and therefore, the or-

der of the trial court setting aside the writ of certiorari, is affirmed. Costs to defendants.

PRATT, J., concurs.

McDONOUGH, Chief Justice.

I concur. I likewise concur in what is said in the opinion of Mr. Justice Latimer.

LATIMER, Justice (concurring in the result).

I concur in the result.

In sustaining the trial court's action in dismissing the writ of certiorari I do so on the narrow ground that I cannot say the Civil Service Commission acted arbitrarily or capriciously in making its findings of fact and in rendering its decision.

I have no quarrel with Mr. Justice Wade's statement that an employee of a public department should be protected in his efforts to hold other employees to a proper discharge of their duty. If the only conclusion the Civil Service Commission could rightly reach was that appellant was bringing to light irregularities on the part of city employees, then it acted capriciously in sustaining the ouster of appellant. However, I believe the facts and circumstances as testified to by the witnesses and the reasonable inferences the Commission could draw from those facts would permit other conclusions.

The Civil Service Commission found that appellant's public demand on June 19, 1946 that Chief of Police Mower and Sgt. Fred Loveless be removed was for the purpose of obtaining revenge for appellant's previous release on December 31, 1945 and to create a lack of discipline and disorder in the police force. The Commission did not find that appellant's disclosure of irregularities was a basis for misconduct or a reason for his dismissal. It found his subse-

quent activities, and particularly his demand for removal, which was made long after the disclosure, had the effect of creating disorder and lack of discipline in the police department.

In determining whether or not the Commission acted capriciously, the following facts are considered by me to be important and pertinent: Appellant, while he was a member of the police force, became aware of the questionable practice but did nothing about disclosing to his superiors, or to the public, any knowledge he might have had until some time after he was discharged from the service on December 31, 1945. After his discharge, he made a detailed investigation to determine whether other members of the department who had not been discharged could be charged with inefficiency and be removed from the force. He was of the opinion that Mower, who later became Chief of Police, was responsible for his discharge and undoubtedly there was no spirit of comradery existing between the two. As a matter of fact, prior to his discharge in 1945, appellant voluntarily went to the home of Mayor-elect Anderson, prior to Anderson's taking office, and informed Anderson that he was in favor of appointing a party, other than Mower, to the office of Chief of Police. Early in March of 1946, he informed the City Auditor that Loveless had been selling tires belonging to the city and that he wanted to obtain certain information from her files and records. During March or April, 1946, he requested a meeting with Mayor Anderson and informed the Mayor that Loveless was misappropriating funds. On March 22, 1946, in a meeting with the City Commission, the press, an OPA representative, and agents of the tire companies, a full hearing was had and all parties concerned were given an opportunity to be heard. on this same date, and just before the meeting closed, pursuant to a previous court order, appellant was reinstated on the police force. The record does not indicate what his activities were from that date until his appearance before the City Commission on June 19, 1946, at which time he

publicly demanded that both Chief Mower and Sgt. Loveless be discharged from the force. Appellant's reasons for including Mower in his demand, even if believed by him, would hardly justify a reasonable person in demanding his removal. The record does not indicate that Mower participated in the scheme and as soon as his attention was directed to the matter by Mayor Anderson, the practice was stopped. He knew tire carcasses were being left with the dealers, but did not know that some of the tires were going to other parties. After he assumed his office, he approved payments for three tires at different prices, but there is no showing that in these instances Mower knew of the irregularities connected with the old casings.

To me, the facts indicate that particularly in the case of Mower, appellant not only became informer, he assumed the role of prosecutor and judge and apparently was unwilling to wait for or abide by a decision of the City Commission. Mower took office on January 8, 1946, so that he had only been in control of the department a short time when his attention was called to the practice and it was stopped. There is evidence that Mower was not culpable in the performance of his duties and I believe the Civil Service Commission could reasonably find that appellant far exceeded his duties as either a citizen or a police officer in an effort to oust and discredit the Chief of Police so that the latter could not effectively administer the affairs of his office.

Whether or not I agree with the findings of the Commission is not the test that can be applied in this instance. There is evidence from which the Commission could find appellant's actions were for revenge and subversive to good order in the police department. In view of this, we cannot substitute our conclusions for those of the Commission. I am of the opinion that the trial court did not err in dismissing the writ of certiorari.

WADE, Justice (dissenting).

I dissent.

Plaintiff was discharged for evincing disrespect to a superior officer and to a fellow officer. The disrespect consisted of truthfully charging that a fellow officer had wrongfully disposed of used tires which were the property of the police department during the war years and that although the chief of police was aware of this he had failed to do anything to prevent it.

In December 31, 1945, applicant was discharged from the police force upon the claim that it was an economy measure. Thereafter and while he was not a member of the police force, plaintiff conducted an investigation into the irregularities in the police force involving the tire transactions above mentioned. Probably this was the first time the particulars of these transactions were known to him. On May 20, 1946, the Civil Service Commission held a public hearing which was attended by plaintiff and the other members of the police force involved in this matter. The next day, May 21st, the plaintiff was reinstated to his position on the police force as the result of a mandamus proceeding instituted by him. Apparently no action was taken regarding the Chief of Police and Sgt. Loveless for their part in the tire irregularities. On June 19th, less than a month thereafter, plaintiff was invited by the Mayor to attend a public meeting of the city commission and when there he was invited to make a statement. In this statement, he recited the facts of the tire irregularities and demanded the removal of the Chief of Police and Sgt. Loveless, because of their part in these irregularities. There is no proof that he made any untrue statement at that meeting. This meeting was held less than a month after plaintiff was reinstated, plaintiff was invited to attend the meeting and give a statement. The statement asked for was, no doubt, on the facts which he had obtained in connection with the tire irregularities in the police force. He was requested by the Mayor to attend this meeting and make a

statement. Under those circumstances it was, in my opinion, his duty to disclose the facts as he had found them in that respect. In discharging him for that statement, even though he added his own recommendation that the Chief of Police and Sgt. Loveless be discharged, I think the commission did not regularly pursue its authority.

Upon such facts the majority opinion sustains the action of the civil service commission in upholding appellant's discharge on the ground that it was for the good of the service in that his action created lack of discipline on the force. To my mind it is anomalous to hold that the truthful charging of irregularities in a public department by one of its employees when asked for a statement by the City Commission is a breach of discipline and is bad for the service. What is "for the good of the service" should be "for the good of the public welfare" and those terms should be correlative and that which promotes the former should also promote the latter. The public welfare would be ill served if an employee of a department who is usually in a better position than an outsider to know of any irregularities is to be hampered in making such irregularities known because it is considered bad for discipline. Discipline has its place where the acts of the superior or fellow employee are rightful and the act of the one disciplined is an infraction of some rule, but it does not have any place where the act will benefit the public by exposing irregularities, regardless of the motive for such exposure. An employee of a public department should know that it is his right and even duty to make such exposures and not be placed in a position where fear of loss of his job would cause him to refrain from speaking to the detriment of the public welfare. It is for these reasons that I cannot agree with the prevailing opinion.