2008 UT App 351

**Kelly KRAMER and Rose Kramer, Petitioners,**

v.

**STATE RETIREMENT BOARD, Public Employees' Health Program, Respondent.**

No. 20070762–CA.

Court of Appeals of Utah.

Oct. 2, 2008.

John F. Fay, Sandy, for Petitioners.

David B. Hansen, Salt Lake City, for Respondent.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Kelly and Rose Kramer (the Kramers) appeal the grant of summary judgment in favor of the Utah State Retirement Board, Public Employees' Health Program (PEHP). We affirm.

## BACKGROUND

¶ 2 Mr. Kramer is a Utah Highway Patrol officer. On February 19, 1996, he signed a Utah Public Employees Health/Dental Enrollment Form (the Enrollment Form). The third section on the Enrollment Form stated, "I represent that all information is true and correct. By signing below I hereby ... agree to the terms and conditions in the Utah Retirement Systems/PEHP Master Policy [ (the Master Policy) ]." Mr. Kramer also enrolled, among others, his wife, Mrs. Kramer. The Master Policy included the following clause regarding subrogation (the Subrogation Clause):

In the event that Eligible Benefits are furnished to an Insured for bodily injury or illness caused by a third party, PEHP shall be and is hereby subrogated (substituted) with respect to an Insured's right (to the extent of the value of the benefits paid) to any claim against the third party causing bodily injury or illness, regardless of whether the Insured has been "made whole" or has been fully compensated for the injury or illness.

¶ 3 On September 29, 2001, Mrs. Kramer was involved in an automobile accident. PEHP paid $30,047.45 of Mrs. Kramer's medical expenses stemming from the injuries she sustained in that car accident. Some time later, the Kramers sued the tortfeasor.

¶ 4 In February 2003, through a collection agent, PEHP contacted the Kramers' counsel, notifying him of PEHP's subrogation rights. Nevertheless, neither PEHP nor its collection agent were notified of, or offered an opportunity to participate in, the Kramers' settlement negotiations. When PEHP learned that the Kramers had settled their claim on June 16, 2005, obtaining a payment of $100,000.00, in addition to the $10,000.00 Mrs. Kramer received from the underinsured motorist coverage of her auto insurance policy, PEHP made further attempts to collect the $30,047.45 from the Kramers. Believing that PEHP was not entitled to reimbursement for the medical expenses it had paid on Mrs. Kramer's behalf, the Kramers refused to pay PEHP the $30,047.45.

¶ 5 On March 31, 2006, PEHP submitted a Request for Declaratory Judgment to the Utah State Retirement Board (the Board), claiming that PEHP was entitled to $30,047.45 under the Master Policy. To support its argument, PEHP attached a copy of the applicable version of the Master Policy, a copy of the Enrollment Form, and a history of Mrs. Kramer's paid medical claims. The Board assigned a hearing officer (the Hearing Officer) to preside over the formal adjudicative proceeding.

¶ 6 The Kramers opposed PEHP's Request for Declaratory Judgment, claiming that PEHP lacked standing to bring the action and that even if PEHP did have standing, the Subrogation Clause violated Utah

law. Although the Kramers requested a hearing, the Hearing Officer ordered discovery prior thereto. The parties thereafter conducted discovery.

¶ 7 On March 23, 2007, PEHP filed a Motion for Summary Judgment. In the accompanying memorandum and attachments, PEHP pointed to the Kramers' admissions that (a) Mr. Kramer signed the Enrollment Form, (b) PEHP paid medical claims related to Mrs. Kramer's 2001 accident, (c) the Kramers received $100,000.00 in a settlement, and (d) the Kramers had not paid PEHP any amount claimed via the Subrogation Clause. The Kramers filed a memorandum in opposition in which they did not dispute these facts but disputed only the "implications of [these] fact[s]." The Kramers also provided what they termed "additional facts" to contest PEHP's claim that there were no material facts in dispute. In its response, PEHP admitted to some of these "additional facts," although it argued that others were questions of law for the Hearing Officer to determine.

¶ 8 On July 10, 2007, the Hearing Officer heard oral arguments on PEHP's Motion for Summary Judgment. On July 30, 2007, the Hearing Officer issued his Ruling in which he granted the Motion for Summary Judgment. At the end of his Ruling, the Hearing Officer directed PEHP's counsel "to prepare an appropriate Order in conformity with this Ruling."

¶ 9 The Kramers objected to the findings of fact and conclusions of law proposed by PEHP's counsel on the grounds that the Hearing Officer asked only for an order, not for findings of fact and conclusions of law. Further, the Kramers asserted that the Hearing Officer, and not PEHP's counsel, should prepare the findings of fact and conclusions of law. The Hearing Officer clarified that he wished PEHP's counsel to prepare not only the order but also findings of fact and conclusions of law. "Implicit in [the]

granting of Summary Judgment," the Hearing Officer explained, "is that I found that the facts pleaded and relied upon by [PEHP] are true and uncontested. There are no factual issues to be determined." [1] The Hearing Officer also directed PEHP's counsel to amend the conclusions of law to state that PEHP "has standing to bring this proceeding[,] citing [the] statute relied on," and that "the [S]ubrogation [C]lause is legally enforceable."

¶ 10 On August 22, 2007, the Hearing Officer signed the Findings of Fact and Conclusions of Law and Order on Motion for Summary Judgment. This document included a recitation of the facts described above as well as the following conclusions of law:

1. [PEHP] has standing to bring this action against [the Kramers] pursuant to Utah Code Ann. § 49–11–613.

2. The [Subrogation Clause] is legally enforceable.

3. [PEHP] is entitled to summary judgment as a matter of law because there is no genuine issue as to any material fact.

4. The plain language of the PEHP Master Policy requires PEHP to be reimbursed $30,047.45 the amount paid in medical expenses on behalf of … Mrs. Kramer for which she also received a $100,000 settlement.

Presumably, the Board approved the Order of the Hearing Officer. Pursuant to the Utah Administrative Procedures Act (UAPA),[2] the Kramers appeal summary judgment on numerous grounds, including the sufficiency of the Findings of Fact and Conclusions of Law and Order.

## ISSUES AND STANDARD OF REVIEW

¶ 11 The Kramers challenge PEHP's standing to bring its claim against them before the Board. Because standing in the administrative law context is a "general question of law," *Utah Chapter of the Sierra Club*

---

1. As counsel for PEHP conceded at oral argument before this court, the "findings" of fact were actually just a summary of the undisputed facts, not true findings of fact, and as such are entitled to no particular deference.

2. We have jurisdiction under UAPA. *See* Utah Code Ann. § 63G–4–403(1) (Supp.2008) ("[T]he Court of Appeals has jurisdiction to review all final agency action resulting from formal adjudicative proceedings."); *id.* § 63G–4–404(1) (enumerating the powers of appellate courts over reviews of formal adjudicative proceedings).

*v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 13, 148 P.3d 960 (internal quotation marks omitted), we review an agency's determination of standing for correctness, *see id.* ("As a court, we are in a better position than an agency to determine whether this doctrine [of standing] has been properly interpreted and applied, just as we are in a better position to review questions of constitutional and statutory interpretation. Moreover, the policy underlying the correctness standard of review for interpretation of constitutional, statutory, and common law issues applies equally to standing."); *Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 13, 7 P.3d 777 (stating that on questions of law, "appellate review gives no deference to ... [an] agency's determination, because the appellate court has the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction" (internal quotation marks omitted)).

¶ 12 The Kramers also challenge the sufficiency of the Findings of Fact and Conclusions of Law. We review an agency's "interpretation of general questions of law ... [under] a correction-of-error standard, granting no deference to [agency] decisions." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 18, 38 P.3d

291 (second alteration in original) (internal quotation marks omitted). Relatedly, the Kramers argue that the Hearing Officer improperly granted summary judgment. We review this claim for correctness, granting no deference to the Hearing Officer. *See Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122. We will affirm a grant of summary judgment "only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1185 (Utah 1996).

## ANALYSIS

### I. Standing

¶ 13 The Kramers allege that PEHP lacked standing to prosecute this case before the Board. Specifically, the Kramers claim that because Utah Code section 49–11–613 grants only a "person" the ability to initiate an action, *see* Utah Code Ann. § 49–11–613(1)(c)–(d) (Supp.2008), PEHP had no standing.[3] That same chapter defines PEHP as a "program" created under title 49, chapter 20. *See id.* § 49–11–102(34). "Because PEHP is administered by a state agency," UAPA, along with section 49–11–613, applies to all adjudicative proceedings.[4] *Gunn v.*

3. The Kramers also contend that PEHP "sidestepp[ed] the pre-requisite" of requesting a ruling by the executive director of the Board. *See generally* Utah Code Ann. § 49–11–613(1)(c)–(d) (Supp.2008). However, PEHP filed a Request for Declaratory Judgment before the Board, seeking the then-unnamed hearing officer to "render direction concerning the authority of the [Board] to enforce PEHP contractual subrogation rights against [the Kramers]." In response, the Board appointed the Hearing Officer and notified the parties that the adjudicative proceeding to follow would comply with sections 63–46b–6 through –11 of UAPA and section 49–11–613 of the Utah Code. Thus, although the Board never directly ruled on PEHP's Request for Declaratory Judgment, the Notice effectively served as a rejection of a ruling from the executive director. Moreover, "the law does not require litigants to do a futile or vain act." *Condie v. Condie*, 2006 UT App 243, ¶ 15, 139 P.3d 271 (internal quotation marks omitted); *see also Jenkins v. Equipment Ctr., Inc.*, 869 P.2d 1000, 1003 (Utah Ct.App. 1994) (not requiring action where such action "would be an idle ceremony and of no avail" (internal quotation marks omitted)). The procedural propriety of these actions is borne out by the legislature's subsequent clarifying amend-

ment of section 49–11–613(1) to add subsection (e), which states:

> The executive director, on behalf of the board, may request that the hearing officer review a dispute regarding any benefit, right, obligation, or employment right under this title by filing a notice of board action and providing notice to all affected parties in accordance with rules adopted by the board.

*See* Utah Code Ann. § 49–11–613(1)(e). "[W]here a statute changes only procedural law by providing a different mode or form of procedure for enforcing substantive rights without enlarging or eliminating vested rights," it may be applied retroactively. *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437–38 (Utah 1997) (internal quotation marks omitted). Because section 49–11–613(1)(e) "controls the mode and form of procedure for enforcing the underlying substantive rights" and not the substantive rights themselves, the 2008 amendment is procedural in nature. *See id.* at 438. Therefore, we see no administrative remedy that PEHP failed to exhaust.

4. Further, the Board's decision and any judicial review of such a decision must comply with "the

*Utah State Ret. Bd.*, 2007 UT App 4, ¶ 7, 155 P.3d 113, *cert. denied,* 168 P.3d 339 (Utah 2007).

¶ 14 Thus, while the term "person" is not defined in title 49, UAPA defines this term as "an individual, group of individuals, partnership, corporation, association, political subdivision or its units, governmental subdivision or its units, public or private organization or entity of any character, or another agency." Utah Code Ann. § 63G–4–103(1)(g) (Supp.2008). The Board, as overseers of the Utah State Retirement Systems or Office fits this definition, *see* Utah Code Ann. § 49–11–201(2)(a) (2007) (stating that the Utah State Retirement Office "is an independent state agency"); *id.* § 49–11–203(1) (granting power to the Board to administer "the systems, plans, programs and funds" under title 49). The Office administers PEHP. *See id.* § 49–11–201(1)(b) ("The office shall administer the systems, plans, and programs and perform all other functions assigned to it under this title."); *Gunn,* 2007 UT App 4, ¶ 2, 155 P.3d 113 (citing Utah Code Ann. §§ 49–20–101, –407 (2002 & Supp. 2006)). Therefore, PEHP also comes within this definition of the term "person." [5]

¶ 15 In addition, *In re E.H.,* 2006 UT 36, 137 P.3d 809, defines standing as when a plaintiff "suffer[s] a 'distinct and palpable injury that gives rise to a personal stake in the outcome' of the case." *Id.* ¶ 49 (quoting *Washington County Water Conservancy Dist. v. Morgan,* 2003 UT 58, ¶ 17, 82 P.3d 1125). The Kramers' failure to subrogate

$30,047.45 of their settlement under the Master Policy is a distinct, palpable injury to PEHP. Therefore, PEHP had standing to bring the action. Because PEHP had a cognizable injury, PEHP had standing to bring this case before the Board.[6]

## II. Summary Judgment

¶ 16 The Kramers, citing to *Young v. Young,* 1999 UT 38, 979 P.2d 338, contend that the Findings of Fact and Conclusions of Law and Order lacked sufficient detail. However, the finding in *Young* was contrary to the evidence before the court. *See id.* ¶ 25. Because there are no facts in dispute here,[7] *Young* has no bearing on this case.

¶ 17 While we might have preferred the Conclusions of Law to include more references to statutes and case law, we, unlike the Kramers, have no difficulty in discerning how, based on the uncontested facts, the Hearing Officer reached the legal conclusions he did. *See generally Schuurman v. Shingleton,* 2001 UT 52, ¶ 8, 26 P.3d 227 (stating that in drafting a ruling granting summary judgment, "the [Board] need only include the basic essentials of the grounds upon which it relies").[8]

¶ 18 The Kramers point to *Sandberg v. Klein,* 576 P.2d 1291 (Utah 1978), to argue that because "the understanding, intention, and consequences of [the] facts were vigorously disputed[, t]hese matters can only be resolved by trial." *Id.* at 1292. For example, the Kramers disagreed with the Hearing

---

procedures and requirements of [UAPA]." Utah Code Ann. § 49–11–613(2)(b), (7).

**5.** The Kramers also argue that because section 49–20–401 does not address PEHP's authority to bring an action, *see* Utah Code Ann. § 49–20–401 (Supp.2008), PEHP lacks the authority to do so. This argument is premised on the idea that PEHP is not a "person" but a "program" with limited rights. Given our determination that PEHP meets the UAPA definition of a "person," this argument lacks merit.

**6.** Notwithstanding PEHP's belief that a more generous reading of the Kramers' briefs suggests that the Kramers are in reality challenging the Board's subject matter jurisdiction over PEHP's claim, the Kramers do not challenge the Board's subject matter jurisdiction, and we do not address the issue.

**7.** The Kramers challenge only the "implications" of the facts and not the facts themselves; therefore, the material facts are undisputed. If they were not, summary judgment would be improper on that basis alone.

**8.** The Kramers also claim that because the Hearing Officer instructed PEHP to draft the Findings of Fact and Conclusions of Law and Order, they were somehow deprived of the Hearing Officer's "independent review or … his own judgment." However, the practice of asking counsel for the prevailing party to draft findings of fact and conclusions "is so general as to be said to be the universal practice in this jurisdiction." *Erkman v. Civil Serv. Comm'n,* 114 Utah 228, 198 P.2d 238, 242 (1948).

Officer's conclusion that by signing the Enrollment Form, they agreed to the terms of the Master Policy, primarily because, notwithstanding its availability, they never were given a copy of the Master Policy until litigation commenced. However, this argument is in reality a challenge only to the Hearing Officer's legal conclusion that the Master Policy was a valid and binding contract. As such, the Kramers did not dispute the facts upon which the Hearing Officer relied in reaching his legal conclusion and in granting PEHP's Motion for Summary Judgment. Therefore, summary judgment was appropriate if correct as a matter of law, given the undisputed facts.

¶ 19 The Kramers argue that the Master Policy was ambiguous, was a contract of adhesion, improperly incorporated the Subrogation Clause by reference, and violated the "reasonable expectations" and "common fund" doctrines; that the Kramers lacked proper notice or knowledge; that enforcement would result in an inequitable "double recovery"; and that the Kramers were not "made whole." We address each legal argument regarding contract interpretation in turn. *See generally Quaid v. U.S. Healthcare, Inc.*, 2007 UT 27, ¶ 10, 158 P.3d 525 ("Our analysis is rooted in the concept that an insurance policy is a contract between two parties."); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993) ("An insurance policy is merely a contract between the insured and the insurer . . . ."); *Gunn v. Utah State Ret. Bd.*, 2007 UT App 4, ¶ 10 n. 1, 155 P.3d 113 ("Because the parties agreed to subrogation in the policy, the issue . . . is a matter of contract interpretation."), *cert. denied*, 168 P.3d 339 (Utah 2007).

A. Ambiguity

■ ¶ 20 The Kramers allege that the material provisions in the Master Policy are ambiguous and that, therefore, the policy is unenforceable. "Insurance policy language is considered ambiguous if it is 'unclear, it omits terms, or the terms used to express the intentions of the parties may be understood to have two or more plausible meanings.'" *Quaid*, 2007 UT 27, ¶ 10, 158 P.3d 525

(quoting *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 15, 133 P.3d 428).

¶ 21 The Master Policy clearly defined the relevant terms "Eligible Benefit" and "subrogation." More importantly, the Kramers have not argued an alternate, let alone reasonable, interpretation of the terms of the Master Policy at issue. *See generally Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 772 (Utah 1995) ("To demonstrate ambiguity, the contrary positions must each be a reasonable interpretation of the terms in the provision."). Therefore, we see no ambiguity in the relevant provisions of the Master Policy.

B. Adhesion

■ ¶ 22 The Kramers summarily state that the Master Policy is unenforceable because the Subrogation Clause was "contained in an adhesion contract." Although they cite to the record where they had previously made this claim, they cite no supporting case law or statutes in their brief, nor do they develop this assertion further. Their argument simply does not comport with appellate briefing rules. *See* Utah R.App. P. 24(a)(9) (requiring an appellant's argument to "contain the contentions and reasons of the appellant with respect to the issues presented"); *West Jordan City v. Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874 ("This court is not a depository in which the appealing party may dump the burden of argument and research. An adequately briefed argument must provide meaningful legal analysis. A brief must go beyond providing conclusory statements and fully identify, analyze, and cite its legal arguments. This analysis requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." (footnotes and internal quotation marks omitted)). Thus, we decline to address this argument further.

C. Incorporation by Reference

■ ¶ 23 The Kramers, citing to Utah Code section 31A–21–106(1), argue that the Enrollment Form illegally incorporated the Subrogation Clause by reference. *See generally* Utah Code Ann. § 31A–21–106(1) (2005) ("[A]n *insurance policy* may not contain any

agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery, unless the policy, application, or agreement accurately reflects the terms of the incorporated agreement, provision, or attached document." (emphasis added)). However, the Enrollment Form contains no material terms regarding the Kramers' health insurance. Therefore, the Enrollment Form was not the contract and does not fall under section 31A–21–106(1)'s prohibition on incorporation by reference in insurance policies. *See generally Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995) (stating that in order to prove that there is a contract between parties, the party so claiming carries "the burden of proof for showing the parties' mutual assent as to all material terms and conditions"). Rather, the contract between the parties is the Master Policy.

¶ 24 Moreover, even if the Enrollment Form did incorporate the Subrogation Clause by reference, the legislature expressly exempted PEHP from the prohibition on incorporation by reference. Title 31A, the insurance code, "does not apply to ... self-insurance," Utah Code Ann. § 31A–1–103(3)(f) (Supp.2008), and under title 49, the Utah State Retirement and Insurance Act, PEHP must "act as a self-insurer of employee benefit plans and administer those plans," Utah Code Ann. § 49–20–401(1)(a) (Supp. 2008). Therefore, the Subrogation Clause was not improperly incorporated by reference.[9]

### D. Reasonable Expectations Doctrine

¶ 25 The Kramers contend that the Subrogation Clause violates the reasonable expectations doctrine, citing *Wagner v. Farmers*

*Insurance Exchange*, 786 P.2d 763 (Utah Ct.App.1990). *See generally id.* at 766 (listing the factors used in determining an insured's reasonable expectations). However, in *Alf v. State Farm Fire & Casualty Co.*, 850 P.2d 1272 (Utah 1993), insureds also argued that their insurance policy's "language violate[d] their reasonable expectations of coverage." *Id.* at 1275. The supreme court noted that the previous year the court had "declined to adopt [the reasonable expectation doctrine] as the law in Utah." *Id.* (referencing *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 805–06, 806 n. 16 (Utah 1992) (addressing the validity of the reasonable expectations doctrine and concluding that preexisting equitable and tort remedies are sufficient to protect the insured against overzealous insurers)). PEHP could not have violated the reasonable expectation doctrine because such a doctrine does not exist under Utah law.

### E. Common Fund Doctrine

¶ 26 The Kramers state that "if ... PEHP's subrogation provisions violated Utah's 'common fund' doctrine then the provisions are not enforceable." While the Kramers cite to two cases, they do not provide any analysis of the doctrine, nor do they apply the undisputed facts to this doctrine. Such briefing may be inadequate. *See* Utah R.App. P. 24(a)(9); *Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874.

¶ 27 In any event, the Kramers do not argue that the Subrogation Clause in fact violates the common fund doctrine, nor do they cite any authority stating that a violation of this doctrine invalidates contractual provisions. Thus, even if the doctrine did apply (which it does not),[10] the Kramers have

---

9. The Kramers also cite to *Cullum v. Farmers Insurance Exchange*, 857 P.2d 922 (Utah 1993), to support their contention. However, *Cullum* struck down a portion of the insurance contract at issue in light of the statutory prohibition on incorporation by reference found in section 31A–21–106. *See id.* at 925. Given that PEHP is specifically excluded from the prohibition on incorporation by reference, *see* Utah Code Ann. § 31A–1–103(3)(f) (Supp.2008); Utah Code Ann. § 49–20–401(1)(a) (Supp.2008), *Cullum* is inapplicable to the present case.

10. The Kramers cite *Stewart v. Utah Public Service Commission*, 885 P.2d 759 (Utah 1994), and *Barker v. Utah Public Service Commission*, 970 P.2d 702 (Utah 1998), claiming that these cases "hold[] that those with valid/enforceable subrogation rights must contribute a fair share of the total fees and costs incurred by the plaintiff in securing the settlement fund monies." *Stewart* and *Barker*, however, stand for no such proposition; rather, they involve attorney fees claims among plaintiffs in class action suits and those individuals who fail to join the suit but neverthe-

failed to state any law holding that a violation of the doctrine would merit reversal.[11]

### F. Lack of Notice

¶ 28 The Kramers' affidavits and appellate briefs state that they were never given a hard copy of the policy, nor did they have a chance to review the Master Policy prior to this dispute. However, we have long held that "an insured is under a duty to read his application before signing it, and will be considered bound by a knowledge of the contents of his signed application." *Theros v. Metropolitan Life Ins. Co.*, 17 Utah 2d 205, 407 P.2d 685, 688 (1965). *But see Marks v. Continental Cas. Co.*, 19 Utah 2d 119, 427 P.2d 387, 388–89 (1967) (refusing to apply this doctrine where the enrollment form did not include a provision similar to that in *Theros,* stating that the applicant had read the form and affirmed that the applicant's answers were true to the best of her knowledge). The general rule applies here because the Enrollment Form contained a provision referencing the Master Policy and identifying it as the actual contract of insurance.

### G. Double Recovery

¶ 29 The Kramers state that because they paid their insurance premiums, any subrogation of the medical expenses PEHP paid for Mrs. Kramer's care would result in a "double recovery." However, the Kramers fail to cite any case law supporting this claim, and we therefore decline to consider their argument further. *See* Utah R.App. P. 24(a)(9); *West*

*Jordan City v. Goodman,* 2006 UT 27, ¶ 29, 135 P.3d 874.

### H. Made Whole doctrine

¶ 30 The Kramers argue that because Mrs. Kramer's damages were far in excess of the $110,000 the couple recovered from the settlement and from Mrs. Kramer's underinsured motorist coverage, subrogation would violate the common law doctrine that tort victims must be made whole before subrogation rights are triggered. "The subrogation doctrine can be modified by contract, *but in the absence of express contractual terms to the contrary,* 'the insured must be made whole before the insurer is entitled to be reimbursed from a recovery from the third-party tort-feasor.'" *Birch v. Fire Ins. Exch.,* 2005 UT App 395, ¶ 7, 122 P.3d 696 (emphasis added) (emphasis and footnote omitted) (quoting *Hill v. State Farm Mut. Auto. Ins. Co.,* 765 P.2d 864, 866 (Utah 1988)). Here, the Master Policy expressly states: "PEHP shall be and is hereby subrogated ... *regardless* of whether the Insured has been 'made whole' or has been fully compensated for the injury or illness." (Emphasis added.) Therefore, PEHP drafted its Subrogation Clause specifically to exclude the made whole doctrine, which practice is permissible under Utah law, *see id.*

### CONCLUSION

¶ 31 PEHP had standing to pursue its claim against the Kramers in an administrative proceeding, and the Hearing Officer had authority to hear and rule on the matter.

---

less seek recovery. *See Barker,* 970 P.2d at 708 ("Courts award attorney fees in common fund cases to avoid the unjust enrichment of those who benefit from the fund that is created by the litigation and who otherwise would bear none of the litigation costs." (omission and internal quotation marks omitted)); *Stewart,* 885 P.2d at 782 n. 18. Because the Kramers were the defendants in this case and the common fund doctrine has nothing to do with the interpretation of contracts, the doctrine is inapplicable to this case.

11. Moreover, the Kramers omit the fact that their counsel refused to include PEHP in the settlement negotiations, despite PEHP's requests to participate. Therefore, even if a violation of the common fund doctrine were reversible error, the alleged error was created by the Kramers'

counsel, not PEHP. Common sense and equity forbid plaintiffs from causing an error and then benefitting therefrom. *See Tanner v. Provo Reservoir Co.,* 99 Utah 158, 103 P.2d 134, 136 (1940) ("[The p]laintiff is estopped to challenge the decree ... because he failed to disclose his claims when [the] defendant was relying on him ... so to do."). A party who either leads another to commit an error or by its conduct approves the error committed by another, cannot later take advantage of such error on appeal. *See Ludlow v. Colorado Animal By-Products Co.,* 104 Utah 221, 137 P.2d 347, 354 (1943). *See generally Pratt v. Nelson,* 2007 UT 41, ¶¶ 17–22, 164 P.3d 366 (discussing the invited error doctrine); *State v. Winfield,* 2006 UT 4, ¶ 15, 128 P.3d 1171 (same).

Because the material facts were not disputed, the Hearing Officer properly decided this case as a matter of law. PEHP is entitled to recover the $30,047.45 it paid for Mrs. Kramer's medical expenses. We therefore decline to disturb the Board's decision.

¶ 32 I CONCUR: GREGORY K. ORME, Judge.

¶ 33 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.