**2018 UT App 170**

## THE UTAH COURT OF APPEALS

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
Appellee,
*v.*
MICHAEL W. SMAISTRALA,
Appellant.

Opinion
No. 20160401-CA
Filed August 30, 2018

Second District Court, Ogden Department
The Honorable W. Brent West
No. 130902158

Paul M. Belnap and Chet W. Neilson, Attorneys
for Appellant

Randall R. Smart and Jeffrey A. Callister, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1     Michael W. Smaistrala found himself sucked into the vortex of Utah insurance subrogation law when his insurer, National Union Fire Insurance Company of Pittsburgh, PA (National Union), demanded that he return $127,000 that the company had paid out on his behalf. When the district court ruled as a matter of law that Smaistrala was indeed required to return the money because he had settled a lawsuit with a group of potential tortfeasors, Smaistrala filed an appeal in this court. Specifically, Smaistrala claims that the district court erred in concluding that he breached the insurance contract as a matter of

law. Further, Smaistrala claims that the district court erred by ruling that National Union did not need to show the liability of the parties with whom Smaistrala had settled. We agree and reverse.

BACKGROUND

¶2     Smaistrala's injuries occurred while he was resting in the sleeper unit of his uncle's semi-truck. Uncle, who employed Smaistrala, was driving the truck at the time; Uncle lost control of the semi-truck on an icy overpass and rolled the vehicle. National Union, as Smaistrala's insurer, paid Smaistrala roughly $127,000 for medical services and disability benefits as a result of the accident.

¶3     Smaistrala sued Uncle, SRF LLC, KB Trucking, and Fleet Car Lease,[1] alleging negligence by Uncle and negligent supervision and entrustment by SRF, KB, and Fleet Car. The case proceeded, and the parties made preparations for mediation. Counsel for Smaistrala informed National Union of the pending mediation and offered to "represent and protect [National Union's] interests regarding the subrogation."[2] National Union

---

1. The four original defendants in this action were: (1) Uncle—driver of semi-truck; (2) SRF LLC—Uncle's limited liability company; (3) KB Trucking—entity that sold tractor unit to Uncle; and (4) Fleet Car Lease—entity that contracted with Uncle to pull a trailer for transporting vehicles for the purpose of training new drivers.

2. "The doctrine of subrogation allows an insurer, having paid a loss resulting from a peril insured against, to step into the shoes of its insured and recoup its losses from a tort-feasor whose

(continued…)

declined that offer. At no time did National Union provide Smaistrala with any forms to complete, nor did National Union request that Smaistrala sign any subrogation forms.

¶4    The case subsequently settled. In the settlement agreement, the defendants agreed to pay Smaistrala $300,000. The settlement included a release of all claims Smaistrala may have had against the defendants and stated that the parties "acknowledge and agree that the settlement of the Lawsuit is the compromise of disputed claims and no terms of the Agreement are to be taken as any admission of liability or damages." After the settlement was finished, the court granted a stipulated order of dismissal of the action with prejudice.

¶5    National Union learned of the settlement and eventually filed this lawsuit against Smaistrala, alleging that he breached the insurance contract by failing to preserve National Union's right of subrogation against SRF and KB and by refusing to reimburse the $127,000 that National Union had paid to Smaistrala as a result of the accident.[3] The subrogation provision in the insurance policy states,

---

(…continued)
negligence caused the loss." *Birch v. Fire Ins. Exch.*, 2005 UT App 395, ¶ 7, 122 P.3d 696 (cleaned up).

3. Uncle and Fleet Car were insured under the same policy as Smaistrala. Accordingly, the district court ruled that National Union had no right of subrogation against them. *See Fashion Place Inv., Ltd. v. Salt Lake County*, 776 P.2d 941, 944 (Utah Ct. App. 1989) ("[I]t is a well-established rule that an insurer cannot recover by means of subrogation against its own insured or a coinsured under the policy."). No party has appealed this determination.

To the total extent the Company pays for losses incurred, the Company may assume the rights and remedies of the Insured Person relating to such loss. The Insured Person agrees to assist the Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company.

Additionally, the "Conditional Claim Payment" (CCP) provision in the policy, which National Union believes requires Smaistrala to reimburse the $127,000, states as follows:

If an Insured Person suffers a Covered Loss(es) as the result of Injuries for which, in the opinion of the Company, a third party may be liable, the Company will pay the amount of benefits otherwise payable under this Policy. However, if the Insured Person receives payment from the third party, the Insured Person agrees to refund to the Company the lesser of: (1) the amount actually paid by the Company for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es). If the Insured Person does not receive payment from the third party for such Covered Loss(es), the Company reserves the right to subrogate under the Subrogation clause of this Policy.

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

¶6    National Union eventually filed a motion for summary judgment, which the district court granted. First, the district

court found that "[National Union's] action is a breach of contract and therefore [National Union] does not need to show liability of the underlying tortfeasors." In so concluding, the district court maintained that the Utah Supreme Court held "that if a person is not 'made whole' by a settlement, then that person's insurer has the burden to show that it could have successfully subrogated against the underlying tortfeasors to recover the settlement award." (Quoting *Hill v. State Farm Mutual Auto Ins. Co.*, 765 P.2d 864 (Utah 1988), *overruled on other grounds by Sharon Steel Corp. v. Aetna Cas. & Surety Co.*, 931 P.2d 127 (Utah 1997).) However, the court further elaborated that subrogation is an "equitable doctrine" and that "*Hill* specifically states that the subrogation doctrine 'can be modified by contract.'" (Quoting *Hill*, 765 P.2d at 866.) The court then cited the CCP provision, and concluded that this provision modified the made whole doctrine by addressing the insurer's subrogation rights and requiring that Smaistrala reimburse the funds. Finally, the court concluded that the existence of the insurance contract "render[ed] the equitable subrogation analysis of *Hill* inapplicable."

¶7    The district court concluded that "[National Union] performed under the contract by paying for covered losses [Smaistrala] suffered as a result of the accident. [Smaistrala] breached the contract by settling with [KB] and [SRF] and agreeing to dismiss his lawsuit against them with prejudice. This breach interfered with [National Union's] contractual subrogation right." Accordingly, the district court ordered Smaistrala to reimburse National Union for all payments it made as a result of the accident. Smaistrala appeals.

ISSUE AND STANDARD OF REVIEW

¶8    Smaistrala contends that the district court erred in granting National Union's motion for summary judgment. "An

appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up).

## ANALYSIS

### I. The Subrogation Provision

¶9 The district court concluded that Smaistrala breached the contract by settling with SRF and KB and "agreeing to dismiss his lawsuit against them with prejudice," thereby "interfer[ing] with [National Union's] contractual subrogation right." Smaistrala argues that "the evidence in the record . . . creates an issue of material fact," precluding summary judgment on this point. We agree.

¶10 Smaistrala contracted to "assist [National Union] in preserving its rights against those responsible" for his injuries. That assistance is defined in the subrogation provision as aiding the "Company in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the Company." Only where the subrogation right has not been preserved can a breach be found. Here, there are no possible subrogation rights against Uncle and Fleet Car,[4] and it remains a disputed issue of fact whether SRF and KB have any fault at all. Under Utah law, in a tort action, a fact-finder is to "allocate the percentage or proportion of fault attributable" to

---

4. Indeed, the policy itself states: "This provision shall not apply where prohibited by law." And Utah law prohibits subrogation against co-insureds such as Uncle and Fleet Car. *See Fashion Place*, 776 P.2d at 944; see also *supra* note 3.

the plaintiff and all defendants, whether the defendants are immune or not. Utah Code Ann. § 78B-5-818(4)(a) (LexisNexis 2012); *see also Graves v. North E. Services, Inc.*, 2015 UT 28, ¶ 47, 345 P.3d 619.

¶11   In this case, the determination of relative liability never occurred. Were it determined in a future proceeding that SRF and KB bore no fault, there would be no subrogation claim to preserve. For this reason alone, summary judgment should not have been granted. Further, even if SRF and KB were found to be minimally at fault, a disputed issue of fact precluding summary judgment would still exist as to the amount of the subrogation right that had not been preserved. National Union was thus not entitled to judgment as a matter of law, and the district court erred in granting summary judgment as to the full amount of the claim.

¶12   In addition, Smaistrala argues that he took action to assist National Union in preserving its subrogation rights. Specifically, Smaistrala argues that his attorney contacted National Union and offered to represent its subrogation right at the mediation, but National Union refused. Additionally, Smaistrala argues that he never received the forms indicated in the subrogation provision, so he never had an opportunity to assist National Union by signing anything. These facts, at least at this stage of the proceedings, show a dispute as to whether Smaistrala assisted National Union in preserving its rights against potentially liable parties. Because issues of material fact exist on the issue of breach, summary judgment was not appropriate.[5]

---

5. Although not raised by the parties, we note the following case law. A settlement may not necessarily extinguish an insurer's ability to subrogate. *See Sharon Steel Corp. v. Aetna Cas. & Surety Co.*, 931 P.2d 127, 138 (Utah 1997) ("In third-party insurance

(continued…)

## II. The CCP Provision

¶13    National Union also claimed that Smaistrala breached the CCP provision. In relevant part, the CCP provision states:

> [I]f the Insured Person receives payment from the third party, the Insured Person agrees to refund to the Company the lesser of: (1) the amount actually paid by the Company for such Covered Loss(es); or (2) an amount equal to the sum actually received from the third party for such Covered Loss(es).

However, this provision also specifies:

> At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise.

¶14    The parties differ in their interpretations of this provision. Smaistrala plausibly argues that the provision is triggered only when "liability is determined," and points out that liability has never been determined in this case. On the other hand, National Union argues that the separate paragraphs of the provision apply to two distinct situations, and that the second paragraph

---

(…continued)

contexts, this court has held that where the insured settles with a tortfeasor, and the tortfeasor and/or its insurer was on notice of the other insurer's subrogation right, then the settlement and release will not affect the insurer's right of subrogation."); *Educators Mutual Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1031 (Utah 1995) ("[A] settlement between an injured party and a tort-feasor who has knowledge of the subrogation rights of the injured party's insurer does not destroy the subrogation claim of the injured party's insurer.").

should not be applied to the situation in this case. Assuming, without deciding, that National Union's reading of the provision is also plausible, it would mean that the provision is ambiguous. *See S.W. Energy Corp. v. Continental Ins. Co.*, 1999 UT 23, ¶ 14, 974 P.2d 1239 ("A policy may be ambiguous if it is unclear, omits terms, or is capable of two or more plausible meanings."). In that event, we liberally construe the policy in favor of Smaistrala and arrive at the same result—the district court should not have applied the CCP provision on summary judgment. *See Farmers Ins. Exch. v. Versaw*, 2004 UT 73, ¶ 24, 99 P.3d 796 ("Although we construe insurance contracts using the same interpretive tools we use to review contracts generally, we have frequently declared that because insurance policies are adhesion contracts, they are to be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance." (cleaned up)).[6]

¶15 In the present case, the settlement expressly stated that liability was not being determined. No party admitted fault as part of the settlement agreement, and the settlement agreement in no way apportioned fault between the various tortfeasors. The record reflects that there was no judgment entered nor any arbitration conducted. National Union was the insurer and the moving party in the summary judgment proceeding. Construing the provision against National Union, the provision requires that

---

6. Ordinarily, where a contract's language is ambiguous we look to extrinsic evidence before applying the rule to construe the relevant language against the drafter. *Hillcrest Inv. v. Sandy City*, 2010 UT App 201, ¶ 19, 238 P.3d 1067. While there may exist insurance contracts that are negotiated in arm's length transactions, typically insurance contracts are true adhesion contracts, offered only on a take-it-or-leave-it basis. There is no evidence in the record that the insurance contract here is anything other than an adhesion contract.

liability be determined before the payment obligation is triggered. The provision itself states that the amount shall be paid only when third party liability is otherwise "determined and satisfied." Therefore, summary judgment should not have been granted in National Union's favor based on this provision.

## III. Additional Guidance

¶16 While we recognize that the analysis to this point resolves the issue presented on appeal, because the issues discussed in the district court's ruling are likely to arise again, we address additional issues that may be pertinent and helpful on remand. *State v. Cloud*, 722 P.2d 750, 755 (Utah 1986) ("When a new trial or further proceeding is ordered, it is our duty to pass upon questions of law which may be pertinent and helpful in arriving at a final determination of the case." (cleaned up)).

¶17 In its ruling, the district court concluded that National Union's action is for "breach of contract and therefore [National Union] does not need to show liability of the underlying tortfeasors." The district court then explained that the CCP provision of the parties' insurance contract modified the made whole doctrine, as articulated in *Hill v. State Farm Mutual Automobile Insurance Co.*, 765 P.2d 864 (Utah 1988), *overruled on other grounds by Sharon Steel Corp. v. Aetna Casualty & Surety Co.*, 931 P.2d 127 (Utah 1997), which rendered the analysis in *Hill* "inapplicable" to this case.[7] This analysis is incorrect.

---

7. Under the made whole doctrine, an insured must be made whole (i.e., fully compensated) before an insurer is entitled to be reimbursed from a recovery obtained from a third-party tortfeasor or the tortfeasor's insurer. *Hill v. State Farm Mutual Auto. Ins. Co.*, 765 P.2d 864, 866 (Utah 1988), *overruled on other grounds by Sharon Steel Corp. v. Aetna Cas. & Surety Co.*, 931 P.2d

(continued…)

¶18 The contractual obligation to show liability of the underlying tortfeasor does not necessarily have anything to do with the made whole doctrine. Assuming that the insurance contract modified the made whole doctrine,[8] the particular modification in this case—at least when construed in favor of Smaistrala, as we have construed it here—would not relieve National Union of needing to prove liability of, and the proportion of liability amongst, the released parties. The district court's reading of *Hill* focuses needlessly on whether the made whole doctrine has been expressly modified, and ignores the *Hill* court's statement that an insurer can recover for breach of a contractual subrogation provision only "if [the insurer] shows it could have recovered" from the tortfeasor. *See id.* at 869.

---

(…continued)
127 (Utah 1997). The doctrine applies in the absence of express contractual terms to the contrary. *Id.* In this case, the district court ruled that the contractual terms quoted constituted an express repudiation of the made whole doctrine, and Smaistrala does not actually challenge this determination on appeal. And we express no opinion whether the quoted contract language meets this standard. *Cf. Kramer v. State Ret. Board*, 2008 UT App 351, ¶ 30, 195 P.3d 925 (examining an insurance policy that stated the insurer "shall be and is hereby subrogated . . . *regardless* of whether the Insured has been made whole") (cleaned up).

8. The issue of whether Smaistrala's damages actually exceeded the combined settlement proceeds and the $127,000 National Union had already paid out—in other words, whether Smaistrala has been made whole—was not addressed by the parties below and does not appear to have been a focus of the proceedings before the district court, nor is it mentioned in the briefs on appeal. Thus, the discussion of the made whole doctrine before the district court and on appeal is a red herring.

¶19    In *Hill*, the Utah Supreme Court examined State Farm's subrogation rights, as an insurer, where an insured, Hill, settled with the underlying tortfeasor. *Id.* at 865. Because the record did not contain a "complete copy of the [parties'] insurance policy" and therefore the court was unaware of the "extent of the subrogation terms," the court analyzed subrogation under principles of equity. *Id.* at 867. The court held that State Farm's only avenues to recovery were to show either (a) "that plaintiffs were fully compensated and thus State Farm is entitled to be reimbursed from [the tortfeasor's] insurance policy proceeds," or (b) "that [Hill's] action in releasing [the tortfeasor] breached the insurance policy, and *if State Farm shows it could have recovered from* [*the tortfeasor*], it will be entitled to the proceeds as a matter of equity." *Id.* at 869 (emphasis added). Thus, the questions of whether an insured was made whole and whether the insurer could have recovered from a tortfeasor are separate inquiries. Simply put, *Hill* does not establish the distinction upon which the district court's decision rested.

¶20    The district court here further erroneously concluded that "the equitable subrogation analysis of *Hill* [is] inapplicable" to this case because the parties' subrogation rights are governed by contract. The district court again misreads *Hill* and its progeny. It seemed to conclude that subrogation is a completely equitable doctrine and that because this case involved a contract, the "equitable" subrogation doctrine in *Hill* did not apply at all. Lost in such reasoning is the fact that *Hill* and every other Utah case addressing the made whole doctrine involved an insurance policy—a contract.[9]

---

9. The following are some examples of cases addressing the made whole doctrine that involved an insurance policy: *Wilson v. Educators Mutual Ins. Ass'n*, 2017 UT 69, ¶ 19, 416 P.3d 355; *Anderson v. United Parcel Service*, 2004 UT 57, ¶ 10, 96 P.3d 903;

(continued…)

¶21   This analysis fails first because *Hill* in no way holds that an insurance contract generally displaces equitable subrogation. *Hill* instead holds that an insurance contract can modify equitable subrogation principles to the extent the contract does so expressly. *Id.* at 866. Second, the contract here not only fails to modify the requirement that liability of potential tortfeasors be shown, but the contract—as we have construed it—expressly embraces the concept. As referenced above, the contract's subrogation provision states that National Union "may assume the rights and remedies of the Insured Person relating to such loss." And in turn, Smaistrala agreed "to assist [National Union] in *preserving its rights against those responsible* for such loss[.]" (Emphasis added.) Further, the CCP provision provides that the obligation to reimburse National Union is triggered when "third party liability is determined." Taken together, these provisions delineate that National Union's subrogation rights are limited to the rights and remedies Smaistrala had and that Smaistrala's duties only extended to rights against "those responsible," or in other words, those liable. Therefore, to determine the amount of the subrogation claim and whether rights have been preserved, National Union must first establish the rights and remedies Smaistrala had against "those responsible"—the liability of the alleged tortfeasor or tortfeasors.

¶22   Finally, even if the distinction the district court misapprehended did exist, that difference alone fails to explain why a showing by National Union of liability against settling parties does not apply under principles of contract. One of the

---

(…continued)

*State Farm Mutual Auto. Ins. Co. v. Green*, 2003 UT 48, ¶ 35, 89 P.3d 97; *Transamerica Ins. Co. v. Barnes*, 505 P.2d 783, 785–86 (Utah 1972); *Kramer v. State Ret. Board*, 2008 UT App 351, ¶ 30, 195 P.3d 925; *Birch v. Fire Ins. Exch.*, 2005 UT App 395, ¶ 9, 122 P.3d 696.

most basic tenets of contract law is that a party must prove damages to recover under a breach of contract claim. *See America West Bank Members, LC v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224; *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934).

¶23　The record demonstrates that questions of fact remain on what level of liability SRF, KB, and the other entities released by the settlement had, if any. The liability of those entities is material to the question of damages. *See Hill*, 765 P.2d at 869 (explaining that "if [the insurance company] shows it could have recovered from [the tortfeasor], it will be entitled to the [insurance] proceeds"). That the potentially liable parties paid money to Smaistrala is of no consequence because the settlement expressly says that "no terms of the Agreement are to be taken as any admission of liability or damages." And, as stated, the settlement included other parties likely to be found more comparatively liable than SRF or KB, but for which subrogation is not allowed because those parties are insured under the same policy.

¶24　This is not a case where an insured has settled with the only potentially liable party. The need to prove liability is especially acute here because National Union is legally barred from seeking subrogation against some of the at-fault parties—indeed perhaps even the most at-fault party, Uncle—because they are a co-insured under the policy.

CONCLUSION

¶25　The district court erred by entering summary judgment in favor of National Union. Questions of fact remain that preclude summary judgment. Further, the district court should not have applied the CCP provision because liability had not yet been established. We therefore reverse the district court's grant of

summary judgment in favor of National Union, and we remand this case for further proceedings consistent with this opinion.

—————